# THE COUNTY OF DU PAGE
## v.
# HENRY H. MARTIN ET AL., COMMISSIONERS.

*Mandamus—Statutory Right of Town to Reimburse from County for Expenses Incurred in Bridge Building—Emergency—Amendment of Record of Town Clerk.*

1. ·The commissioners of highways have the right to control the amendment of a record according to the fact, and to order the clerk to make the amendment accordingly; and when the record is once amended in a proper and legal manner, it has the same force and effect as though originally made

County of Du Page v. Martin.

as amended, and can no more be contradicted by parol than any other law-
ful record.

2.   Upon an application by a town board of road commissioners to the
board of county supervisors for the payment by the county, under Sec. 19,
Roads and Highways and Bridges Act, of one half the expense of the con-
struction of a bridge, the supervisors must not refuse the application
because there is no formal proof of the facts alleged in the petition; but the
petition, if it state the jurisdictional facts, with the affidavits and estimates,
constitutes a *prima facie* case.   If the supervisors have doubts as to the
alleged facts, it is their duty to investigate.

3.   In a mandamus proceeding by the commissioners against the county,
the court may receive evidence that was not before the supervisors.

[Opinion filed August 3, 1891.]

APPEAL from the Circuit Court of Du Page County; the
Hon. C. W. UPTON, Judge, presiding.

This was a petition for a writ of mandamus filed in the Cir-
cuit Court, February 21, 1888, by appellees against appellant,
seeking to compel the board of supervisors of Du Page County
to appropriate to the appellees, as the commissioners of high-
ways of the town of Winfield, the sum of $1,081.60, one-half
the expense of constructing a bridge and its approaches across
the Du Page at Gary's Mills in said township.   By stipulation
the cause was submitted to the court for hearing in vacation,
in Chicago, at chambers.   By the agreement the jury was
waived and the issues submitted to the court.   The demurrer
was overruled, the answer filed, and the court heard the evi-
dence and decided the cause in vacation, May 15, 1890, as of
the September term, 1889.   In vacation after the March term,
1890, the court decided the cause and filed judgment in the
court, granting the prayer of the petition and ordering that a
peremptory writ of mandamus issue against the board of Du
Page County, ordering them to appropriate from the county
treasury a sum sufficient to meet one-half of the expense of
the bridge work mentioned in the petition, amounting to the
sum of $1,081.60, for the use and benefit of the said town of
Winfield, for the purposes and in the manner provided by law.

The petition, which was fully supported by the proof,
showed that there was a public highway running from the

village of Turner to the village of Warrenville across the Du
Page river at a place known as Gary's Mills; that the road
was a public road and subject to the commissioners of high-
ways; that on or about the eighth day of February, 1887,
the bridge on the public highway across said river at Gary's
Mills was, in consequence of high water, washed away and
the river on said road at said point was thereby made
impassable; that in consequence of the destruction of said
bridge at said point it became necessary to construct a new
bridge at said place, together with the approaches thereto,
and that the town of Winfield was responsible for the same;
that the cost of the necessary bridge and the approaches
would be and is more than twenty cents on the $100 of the
latest assessment roll of said town, and that the levy of the
road and bridge tax for said current year in the said town is
for the full sum of sixty cents and more on each $100 allowed
by law for the commissioners of said town to raise, the major
part of which was needed for the ordinary repairs of roads
and bridges in said town, and that all the other facts neces-
sary in order to entitle the commissioners in said town to aid
from the county, as provided in Chap. 121 of the Revised Stat-
utes of Illinois, existed at the time said bridge was destroyed
and still exists.    The petition then shows that on the eighth
day of March, 1887, the petitioners as such commissioners
made a very careful estimate of the probable cost of building
a new bridge and the approaches thereto at such a place, and
attached thereto their affidavits that the same was necessary,
and would not be made more expensive than was needed for
the purpose desired, and thereupon filed the same with the
county clerk of said Du Page County, and presented it to the
board of supervisors of said county regularly in session.
Their petition to the board, estimates and affidavits in sub-
stance were as follows: The petition represented that a
bridge needs to be built over the Du Page river at the place
mentioned in the above petition, and that the town of Win-
field was wholly responsible; that the total cost of building
the bridge would be about $2,300, which sum will be more
than twenty cents on the $100 of the latest assessment roll of

County of Du Page v. Martin.

said town, and that the levy of the road and bridge tax for the present year in said town was for the full amount of sixty cents on each $100 allowed by law for the commissioners, the major part of which is needed for the ordinary repairs of roads and bridges, wherefore the commissioners of highways thereby petition to make an appropriation from the county treasury for a sum of money sufficient to meet one-half the expenses of the said bridge. To said petition to the supervisors was attached an estimate of the commissioners of the probable cost of the bridge, sworn to by them. The petition shows that the board of supervisors rejected the petition for various reasons set up by them, such as the reasonable cost of the bridge would not exceed the required twenty cents on the $100, last year's valuation of said town; that the commissioners did not levy the required sixty cents on the $100 as required by statute referred to, and that a sixty-cent levy would not be needed for the ordinary repairs of the roads in said town, nor a major part of it. The petition for mandamus shows that an emergency existed for the immediate building of the bridge on account of the destruction of the old one, and that the supervisors would not be in session for several months, and the commissioners proceeded to construct the same and completed it March 1, 1887, at a cost of $2,163.21, which was immediately thereafter paid by the commissioners. Therefore a supplemental petition was filed with the county clerk July 24, 1887, and the same presented to the board of supervisors then in session. This petition was supplemental to the former one, setting up the facts as to the emergency in detail, and the manner of letting the contract for the construction of the bridge, and the costs of the same in detail, which was duly verified by the commissioners. This petition to the board of supervisors, as the petition for mandamus shows, was referred to a committee of three of the board of supervisors, who reported September 13, 1887, that it should be rejected for the following reasons:

1. That no emergency existed justifying said commissioners in constructing said bridge before the board had been appealed to for aid.

2.   That the amount alleged to be the contract price and the amount alleged to have been paid out and expended was more than was necessary for the purpose.

3.   That the major part of the taxes levied, referred to in the petition, was not needed for the ordinary repairs on the roads and bridges as alleged.

4.   For other reasons not enumerated and other failures to comply with the law, we recommend the. petition be not granted.

This report was approved by the board and the prayer of . the petition and the supplemental petition denied.   The petition then reiterates the jurisdictional facts entitling the appellees to the relief sought and prays for the writ of mandamus. The bill of exceptions shows that the various facts were true as alleged in the petition.   Clinton J. Nettnorton, clerk of Winfield township since April, 1889, and who succeeded Charles P. Stark, who was dead, identified the records kept by the town clerk of the town.

It was shown by the records of the town clerk, that at the annual town meeting of the town of Winfield in April, 1886, the road and labor system was adopted in said town, and that the road and labor tax of 1886.-7 was levied at forty cents on the one hundred dollars real estate and personal property liable to taxation, and it was shown by the records of the board of supervisors that it had levied twenty cents on the one hundred dollars valuation.   The records of the commissioners of highways on page 396 were read in evidence, which showed that at a meeting of the commissioners, February 19, 1887, it was decided "to build an iron bridge in place of the one swept away" at Gary's Mills, and the legal notices inviting bids for the construction of the bridge were proposed and afterward posted and recorded.   Then the record of a meeting of the commissioners of highways held at the bridge site at Gary's Mills for the purpose of letting the contract of building the bridge held March 1, 1887, was introduced, and in connection therewith an amended record was read and inserted on the same page before the record of the bridge contract, which shows that the board at the same meeting found

that the immediate building of the bridge in question was necessary, and a delay in so doing detrimental to the public interest, and the cost of such new bridge was more than twenty cents on the one hundred dollars on the latest assessments of said town, and the levy of the road and bridge tax for that year was for the full amount of sixty cents on the one hundred dollars, allowed by law for the commissioners to raise, and the major part of which was needed for the ordinary repairs of roads and bridges, and it was unanimously voted that the bridge be immediately built as provided by law, and that aid be asked of the county board as provided by statute. It was conceded by petitioners that the above part of the record last recited was inserted on the 16th day of September, 1889, pursuant to a vote of the commissioners to correct said record, which record of the order to correct was read, and shows that at a meeting of the commissioners of highways of the town of Winfield, duly called and held on the 16th day of September, 1889, C. D. Clark was appointed clerk *pro tem.*, the clerk being absent from the county, and thereupon a motion was duly and unanimously voted that the minutes and record of the previous meeting of the board be amended and corrected to correspond with the fact by inserting the following on page 398 before the record of the bridge contract. The bridge contract was conceded. Their record showed the cost to be $2,163.21, and an order directing the clerk to employ counsel to make application to the board of supervisors for one half the costs of building the bridge.

Messrs. John H. Batten and L. C. Cooper, for appellant.

Mr. Elbert H. Gary, for appellees.

Lacey, P. J.  The right to maintain this action by appellees is claimed to exist and arise under Sec. 19 of "Roads, Highways and Bridges Act," in force July 1, 1883, approved June 23, 1883, Session Laws 1883, page 142.

The section is as follows, to-wit:

"When it is necessary to construct or repair any bridge

over a stream, or any approach or approaches thereto, by means of an embankment or trestle work on a public road in any town, on or near to, or across the town line, in which work the town is wholly or in part responsible, and the cost of which will be more than twenty cents on the one hundred dollars on the latest assessment roll, and the levy of the road and bridge tax for that year in said town was for the full amount of sixty cents on each one hundred dollars ($100) allowed by the commissioners to raise, the major part of which is needed for the ordinary repairs of roads and bridges, the commissioner may petition the county board for aid, and if the foregoing facts shall appear, the county board shall appropriate from the county treasury a sum sufficient to meet one-half of the expenses of the said bridge or other work on condition that the town asking aid shall furnish the other half of the required amount. * * * *Provided*, however, that before any bridge or approaches contemplated as above shall be constructed or repaired under the provisions of this section, the commissioners shall make a careful estimate of the probable cost of the same and attach thereto their affidavits that the same is necessary and will not be made more expensive than is needed for the purpose desired; and such affidavit and estimate shall be filed with the petition. *Provided*, that in case of some emergency arising from the sudden destruction or serious damage to a bridge or its approaches, when delay in repairing or rebuilding would be detrimental to the public interest, such petition to the county board may be presented during the progress of the work or after its completion, and if the facts appear as contemplated by this section, then the county board shall appropriate one-half of such cost, with like conditions that the town pay the other half." ·

It appears from the record in this case, the appellees, as commissioners of highways, soon after the 8th day of March, 1887, petitioned the board of supervisors for the required one-half aid for building the bridge over the Du Page river at Gary's Mills, in which they showed the necessity of the bridge at that point, and that the town of Winfield was wholly responsible for building it; that the point over the said stream

County of Du Page v. Martin.

where the contemplated bridge was to be built was a part of one of the public highways of said town.   They also showed that the total cost of the said bridge would be about the sum of twenty-three hundred dollars ($2,300), according to certificate of the estimate of the cost of the said bridge, signed by the commissioners and verified according to the statute by the said commissioners, showing that the said cost was necessary and that the same would not be made more expensive than was needed, which estimate and affidavit was filed with the petition.,  The petition also showed that the sum necessary to build the bridge would be more than twenty cents on the $100 valuation of the latest assessment roll of the said town, and that the levy of the road and bridge tax for that present year was for the full amount of sixty cents.

In a supplemental petition to the appellant the appellees set up and showed by the necessary averments that an emergency arose on account of the destruction of the old bridge for the building of the new bridge across the river at the point named, and that on the 8th day of March, 1887, they contracted in the proper way for building a new bridge, and that it had been completed at a cost of $2,163.21.   But the appellant's board of supervisors rejected the petition and the supplemental petition for the reasons shown in the statement of the case.   As will be seen by the same statement, the appellees, the commissioners, made all the jurisdictional findings as an organized board and in the manner provided for in the statute to entitle them to the aid from appellant claimed by them, including the proviso respecting the emergency, to authorize the building of a bridge prior to the granting the aid by the board of supervisors, and these findings were introduced in evidence at the hearing of the mandamus in the court below, as duly entered in the records of the town kept by the clerk thereof.   The appellant, as we gather, makes no objection to the record of the town clerk as it appeared at the trial, except that it was improper for the commissioners to order the amendment of the town clerk's record, and for it to be made showing the existence of the emergency to build the

bridge prior to the granting the relief asked for of the appellant. It is insisted by counsel for appellant that it is necessary for the highway commissioners as an organized body to take official action on every material matter entitling them to relief, and that such official action can only be shown by the record which the law requires them to keep of their proceedings, citing the case of The People v. Madison County, 125 Ill. 334. The above case holds, concerning the conditions upon which relief may be granted from a county to a town, that "the acts are by law made jurisdictional and without their concurrence, the county board is without power to appropriate money for the purposes stated." And the Supreme Court further deciding in the said case makes use of this language:

"The determination of these jurisdictional facts is left to the commissioners of highways. Acting as alone they have the power to act, together and as a board, at a meeting of the board, they are to determine," etc., of which determination, the court adds, they are required by the act to make and keep a record. And it appears the court held in that case that one of these facts to be thus founded and recorded in cases where an emergency requires the building of a bridge before the asking of aid was the existence of the emergency. It will be seen that these objections have no force in this case unless the amendment of the record was improperly made; for, admitting that the amendment was proper, every fact existed requiring the supervisors to vote the appropriation sought. The fact that the amendment was not of record at the time that appellees' petition was rejected would not be good grounds for the refusal of the petition. The supervisors or the report of the committee do not base the rejection of the petition upon the facts, or even as a ground of objection, that the finding of the existence of an emergency by the appellees was not of record. If such objection had been made it would no doubt have been obviated at once by the amendment of the record. The petition presented to the board of supervisors by the appellees showed plainly that the building of the bridge prior to presenting the petition

was justified by the emergency caused by the destruction of the bridge by high water. Of these facts the board of supervisors must have been fully informed, as it was a matter of public notoriety, and it does not appear that they even called for the record of the finding of this emergency by the commissioners; it is not necessary, as we understand the law that the board of supervisors may properly refuse to make the appropriation because there is no formal proof of the facts alleged in the petition. Such matters thus presented by the towns through their commissioners acting as public officers make out a *prima facie* case. If the supervisors have any doubts as to the truth of any of the allegations in the petition they should investigate the matter. If they had done so in this case they would no doubt have discovered the true condition of affairs, and the record would have been complete and to their satisfaction. It follows from this that in a mandamus proceeding the court may receive evidence which was not offered before the board of supervisors. Such a defense as this is unsubstantial and has little to commend it to favor, as was fully held in Board of Supervisors v. Town of Condit, 120 Ill. 307. The next point then we will notice is, was the amendment of the town record allowable at the time and in the manner made? We think that it was properly done. "The power of the town clerk to amend a record in accordance with the facts is derived solely from his official character, and it does not depend upon the permission of the court in which it is offered as an instrument of evidence, nor inquiry into the truth of it as originally made or amended." The town clerk may amend according to the facts. The Boston T. Co. v. The Town of Pomfret, 20 Conn. 589; Chamberlain v. Dower, 13 Me. 472; Willis v. Batteville, 11 Mass. 480. If a town clerk be temporarily absent the entries of a clerk *pro tem.* made by direction of the corporate authorities are competent evidence and properly made. Hutchinson v. Pratt, 11 Vermont, 402. In the case of Willis v. Batteville, *supra,* the Supreme Court of Massachusetts said: "We have had frequent occasion to perceive the great irregularity which prevails in our towns

and other municipal corporations, and the courts have always been desirous to uphold the proceedings where no frauds or wilful error was discoverable. It can not be expected that in all corporations persons will every year be elected who are capable of performing their duty with the exactness which would be useful and convenient. We are of the opinion that the clerk had the power to amend the record."

This doctrine was adhered to in Hartwell v. Town of Littleton, 13 Pick. 229. We will take occasion here to say that these words are very apt, and the rules there laid down are peculiarly applicable to town officers and other like officers in this State, and in our judgment will be found quite necessary in following out the strict rules of the law pertaining to town clerks and highway commissioners, laid down in The People v. Madison Co., *supra*. If every official act of the highway commissioners must be recorded at length and in methodical form, frequent amendments will no doubt be required to uphold the rights of the town and the people. We are of the opinion also that the commissioners of highways have the right to control the amendment of a record according to the facts, and to order the clerk to make the amendment accordingly. And when records are once amended in a proper and legal manner, they should have the same force and effect as though originally made and amended, nor can they be contradicted any more by parol than other lawful records. Appellees' attorneys have furnished us authorities more or less applicable to the questions of the rights of amendments herein discussed, and their force and effect, which we cite as follows: Thatcher v. Maack, 7 Ill. App. 635; Jefries v. Rudolff, 73 Ia. 60; Johnson v. Donnell, 15 Ill. 97; Morris v. Trustees, 15 Ill. 269; Madison Co. v. Rutz, 63 Ill. 65; Bliss v. Harris, 70 Ill. 343; Brennan v. Shinkle, 89 Ill. 604; Ames v. Snyder, 69 Ill. 376; Mott v. Reynolds, 27 Vt. 206.

The record when amended operates *nunc pro tunc* and shows that the action of the commissioners took place at the proper time and manner as shown by the amended record, and this can not be contradicted by parol evidence. Therefore

the court properly ruled in rejecting all evidence in regard to matters required to be of record and which were of record. We having now decided that the amendment of the record was proper as made, all the objections of counsel for appellant to the judgment in this case fall to the ground. We now find that the appellees were clearly entitled, according to the statute and the decisions of our Supreme Court, to one-half of the cost of building the bridge in question, from the appellant, and that the appropriation asked for ought to have been made long ago. Seeing no error in the record the judgment of the court below is affirmed.

*Judgment affirmed.*

JUDGE UPTON, having tried the case in the court below, took no part in this decision.