|   |   |
|---|---|
| 20 | 581 |
| 76 | 488 |

## West *against* Howard.

Where a bill in chancery stated, that an antenuptial agreement was entered into between *A* and *B*, that certain personal property then owned by her, consisting of promissory notes, should, after the marriage, remain her sole and separate property; that the avails of a part of such property were delivered by her to him, after their marriage, to be invested by him in certain land, for her and in her name; that land was purchased accordingly, but the conveyance thereof was taken to him, and the legal title was vested in him; it was held, that if there was such an antenuptial agreement, it would constitute her, in equity, a feme sole, in regard to such property; and any contract respecting it, between her and her husband, or any disposition of it by her, which would, were it not for the intermarriage between them, create any right or obligation in her favour against him, would be enforced; but, 2. that the proof of the existence and terms of such agreement, ought to be clear and satisfactory; and 3. as it was found only, that there was some agreement between *A* and *B*, before marriage, respecting the property of *B*, and that, by one of the terms of that agreement, *B* was to retain the sole use and controul of certain notes belonging to her, it was held, that the alleged agreement was not found, with sufficient clearness and definiteness, to warrant a decree founded thereon.

Where the report of a committee, to whom a bill in chancery was referred, stated certain circumstances, as evidence of the existence and terms of an antenuptial agreement between *A* and *B*, regarding certain moneys, the avails of her property, which he received from her during the coverture, but did not state the facts which those circumstances were stated to prove; it was held, that it was the duty of the committee to find and report the facts proved, and not merely to present the evidence, and that it was not the province of the court to find the facts from such evidence.

Where it appeared, that the husband had purchased land, with funds claimed to be the separate property of the wife, and had afterwards sold and conveyed it to a purchaser having no notice of any trust; on a bill in equity, brought by the heir of the wife, after her death, against the husband, for relief; it was held, 1. that the plaintiff's claim constituted only a pecuniary indebtedness of the defendant, to be recovered by an action at law, and a bill in equity was not only unnecessary, but an inappropriate remedy; 2. that the right of the wife, on her death, vested, not in her heirs, but in her executor or administrator, by whom alone it could be prosecuted.

*Tolland,*
August, 1850.

West
*v.*
Howard.

Tʜɪs was a bill in chancery, stating an antenuptial agreement between the defendant and his wife, and praying for a decree which should compel him to convey to the plaintiff, one of her heirs, certain real estate, purchased with money belonging to her. A committee appointed by the court, to find the facts in the cause, made a report, in substance, as follows : " That *Joseph Howard*, the defendant, being about forty-six years of age, and *Ruby West*, named in the bill, about forty-two years of age, were united in marriage, on the 18th of *December*, 1823. She was, at that time, possessed of certain promissory notes, given by *William Babcock*, for property then recently sold to him by her, amounting to 436 dollars, and due the 1st of *April*, 1824, without interest. She was also possessed of certain household furniture, live stock, hay, grain, &c. of the value of about 200 dollars. He was a widower, having seven children, from six months to fifteen years of age. He had a small interest in some real estate, where he now lives, not exceeding 50 dollars in value. He was reported to be poor; but was then, and for some twelve or fifteen years afterwards, town-clerk of the town of *Tolland*, and clerk of the probate district of *Tolland ;* and by his writing and other personal efforts, supported himself and family comfortably, both before and after the marriage. She died in *March*, 1846, without children, leaving two brothers and two sisters, her sole heirs, who still survive her. One brother, and the two sisters, before the bringing of this suit, voluntarily, and without consideration, relinquished all their interest in the estate of said *Ruby*, to their other brother, the plaintiff, who prosecutes this suit for his sole benefit. Before the commencement of this suit, the plaintiff requested the defendant to surrender to him the title to the dwelling-house and land, where he now lives, and all the property in his possession, belonging to said *Ruby*, at her death."

The committee further found, that on the day of their marriage, an agreement in writing, drawn up by him, was entered into between him and her, by which she was to retain the possession and controul of some portion, or the whole, of her property, for a longer or shorter period. The writing was delivered, at the time it was executed, to one *Israel Luce*, for safe-keeping ; but his house, together with the writing, were destroyed by fire, in the year 1830. From the lapse of

time since its execution; the loss of the instrument; the fact that it was drawn up by a person having no professional skill in drafting such instruments; that it was never read to any witness; that during sixteen years between its destruction by fire, and the death of Mrs. *Howard*, he was never requested by her, or her friends, to execute a counterpart, or certify the contents of the writing; the infirmity of human recollection; and the difference of opinion or recollection between those who were present, as to the declaration made by him at the time; these facts, were there nothing else in the case, as the report said, might well create great doubt as to the contents or legal operation of the writing in question.

The committee further found, that a short time before the marriage, and after their marriage contract had been entered into, she delivered said notes to *Israel Luce*, to be kept for her; that within a year after the marriage, he returned them to her, at or about which time, *Babcock* paid her about 200 dollars, on those notes; which payment was made in the presence of her husband, and the money was received by her, with his approbation; that payments were subsequently made to her, from time to time; that some of said notes were re-newed after the marriage, and the renewal notes made payable to " *Ruby Howard*;" that she occasionally loaned money, in sums from 10 to 80 dollars, and took notes to herself, and placed them in the hands of different persons, for safe-keeping, and occasionally gave small sums to an indigent sister; that her husband, having a knowledge of these facts, never interfered, or made any claim to said notes, or to the money received thereon, but spoke of it, as his wife's money; and in one instance, in 1826, he advised his wife to let him invest a portion of the funds so received on said notes, in real estate, as being more useful to the family, and equally secure for her. From these facts the committee found, as a legitimate inference, subject however to the opinion of the superior court, that in respect to said notes, the writing was intended to give her the sole use and controul of them, as a feme sole; that in respect to the rest of the personal estate, it went into the hands of her husband, by her consent, and was used for their joint and mutual benefit; and it did not appear that any portion of it remained, at the time of her decease.

The committee further found, that on the 18th day of *No-*

*vember*, 1826, said *Joseph* received of the said *Ruby*, 313 dollars, avails of said notes, and invested the same in real estate, under a just expectation, on her part, that the deed was to be taken in her name; but that he should cultivate the land for the use of himself and family. But said land being, at the time of such purchase, capable of great improvement from labour and cultivation, and in expectation of making such improvement, he, fearing that if a deed was taken in her name, as she had no children, he and his heirs would lose the benefit of such improvement, took the deed to himself; and the title so remained, until the land was sold, in *March*, 1844, when the avails were appropriated, by him, to pay debts contracted by him in building the house he now occupies, or in the purchase of other lands, or in some other way to his use, and was never repaid to said *Ruby :* that between the purchase and sale of said land, said *Joseph* did greatly improve, and thereby add to the value of said land ; and the value thereof was further enhanced, by the rise of land during that period; and said land, with the addition of five acres subsequently bought by him, and added to it, was sold, *March* 28th, 1844, for 675 dollars; but how much or what proportion of the increased value of said land was to be attributed to either of the causes referred to, the committee did not feel authorized to find from any testimony before him.

The committee further found, that the land connected with the dwelling-house now owned and occupied by said *Joseph*, was in part owned by him, at the time of his marriage; and that he cut a portion of the timber to build his house, from the land purchased by him in 1826 ; that said house, and the land connected therewith, were owned and occupied, by said *Joseph* and *Ruby*, from the time the house was built, in 1827, until her death, in *March*, 1846 ; that a note of 30 dollars, made by said *Babcock*, payable to *Ruby Howard*, with interest, dated *May* the 23d, 1839, and still due and unpaid, was left by her, at her death, in the hands of said *Joseph*, and is now in his possession ; but the committee did not find, that any money arising from said notes of 436 dollars, went into the hands of said *Joseph*, except said sum of 313 dollars.

On this finding of the committee, in connexion with the bill, the case was reserved for the advice of this court, as to what decision should be made thereon.

*T. C. Perkins* and *Storrs*, for the plaintiff, contended, 1. That from the finding it appears, that in contemplation and in consideration of marriage, an agreement in writing was drawn up and entered into, purporting, and believed to be sufficient, to secure to the intended wife, the property she then had, to her sole and separate use. In the first place, without some arrangement of this sort, the property would have become the husband's, by the marriage, or at least subject to his disposal; and had it been their intention to leave it so, they would have entered into no stipulation, whatever, in regard to it. Secondly, in respect to the notes, the fact is distinctly found, that the writing was *intended* to give her the sole use and controul of them, as a feme sole. Intention is to govern, in the construction of contracts; and no precise form of words is requisite. In this case, it is sufficient, if it appears, that it was *intended* that the husband should have no interest. 4 *Kent's Com.* 304. 2 *Sw. Dig.* 122. 126. *Villiers* v. *Villiers*, 2 *Atk.* 72. *Fisher* v. *Fields*, 10 *Johns. R.* 495. Thirdly, from the facts found as to the conduct of the parties, after the writing was executed, and after their intermarriage, it is apparent, that the intention was, to protect her estate from the rule of law which makes it the husband's. There can be but one opinion as to the intent.

2. That antenuptial contracts are *favoured* in equity, and will receive such a construction as will carry them into effect according to the *intent* of the parties. *Brown* v. *Slater* & al. 16 *Conn. R.* 192. *Andrews* v. *Andrews*, 8 *Conn. R.* 80. *Selleck* v. *Selleck*, 8 *Conn. R.* 85. n. 2 *Sw. Dig.* 123. 2 *Kent's Com.* 163. 165. And where there is no trustee, the husband himself will be considered as trustee. *Baldwin* v. *Carter*, 17 *Conn. R.* 208. 2 *Sw. Dig.* 122.

3. That if one purchase land with the money of another, and take a deed in his own name, there will be a resulting trust in favour of him who furnished the money. 4 *Kent's Com.* 305, 6. 2 *Sw. Dig.* 128. *Methodist Epis. Church* v. *Jaques*, 1 *Johns. Ch. R.* 450. *Boyd* v. *McLean & ux. Id.* 582. Where trust money can be traced into land, the land in general is liable. 2 *Sw. Dig.* 117. *Lench* v. *Lench*, 10 *Ves.* 517. *Taylor* v. *Plumer*, 3 *Mau. & Selw.* 562. *Murray* v. *Lylburn*, 2 *Johns. Ch. R.* 442.

4. That real estate vests immediately in the heir or devisee,

*Tolland,*
*August, 1850.*
——
West
*v.*
Howard.

*Tolland,*
*August,* 1850.

West
*v.*
Howard.

on the death of the owner, and the executor or administrator has no controul over it, unless it is wanted for the payment of debts. *Goodrich* v. *Thompson* & al. 4 *Day*, 215. *Peck* v. *Botsford,* 7 *Conn. R.* 178. 1 *Sw. Dig.* 444. *Roorbach* v. *Lord,* 4 *Conn. R.* 349. *Wattles* v. *Hyde,* 9 *Conn. R.* 14.

5. That there having been no administration granted on the estate of Mrs. *Howard,* and there being no debts against it, so far as appears, the heir is now entitled to the real estate ; and the remedy resorted to is the appropriate one. *Andrews* v. *Andrews,* 80 *Conn. R.* 80. *Selleck* v. *Selleck, Id.* 85. n. 2 *Sw. Dig.* 115. 4 *Kent's Com.* 306. *Hill* v. *Bishop of London* & al. 1 *Atk.* 618.

*Brockway* and *Hyde,* for the defendant, contended, 1. That the facts found by the committee did not warrant the legal inference by him stated, conditionally, *viz.* that in respect to the notes, the writing was intended to give Mrs. *Howard* the sole use and controul of them as a feme sole. *Clancy on H. & W.* 362. *Jarvis* v. *Prentice,* 19 *Conn. R.* 262. *Fourth Eccles. Soc. in Middletown* v. *Mather,* 15 *Conn. R.* 587.

2. That if the facts found by the committee do warrant the inference that the notes were intended to be the sole and separate estate of Mrs. *Howard,* yet they also warrant the further conclusion, that as to the 313 dollars, this sum, by her act, became the property of her husband ; the antenuptial contract having been abandoned. 2 *Sw. Dig.* 128. *Reeve's Dom. Rel.* 166. *Jaques* v. *Methodist Epis. Church,* in err. 17 *Johns. R.* 548. *Powell* v. *Hankey,* 2 *P. Wms.* 82. *Clancy on H. & W.* 547. & seq.

3. That if there are merits in the application, the wrong person has come for relief : it should be the administrator of Mrs. *Howard's* estate, not her heir at law. 1 *Sw. Dig.* 444, 5. *Roath* v. *Smith,* 5 *Conn. R.* 133. *Travis* v. *Waters,* 1 *Johns. Ch. R.* 85. *Baldwin* v. *Carter,* 17 *Conn. R.* 208. 2 *Sw. Dig.* 219. 223. *Reeve's Dom. Rel.* 167.

4. That the plaintiff is seeking his remedy before a wrong tribunal. If he is entitled to the property in question, he may recover it in an action at law. *Bailey* v. *Strong,* 8 *Conn. R.* 278. *Beach* v. *Norton,* 9 *Conn. R.* 182. *Stannard* v. *Whittlesey, Id.* 566.

STORRS, J. The plaintiff in this bill alleges, that an agreement was entered into between the defendant and his wife, before their intermarriage, that certain personal property, then owned by her, consisting of promissory notes, should remain her sole and separate property after her marriage ; that the avails of a part of said property were delivered by her to him, after their marriage, to be invested by him in certain land, for her and in her name ; and that land was purchased accordingly ; but that the conveyance thereof was taken to him ; and that the legal title is now in him ; and therefore, seeks to compel a conveyance from him to the plaintiff, who is one of her heirs, and claims an assignment from her other heirs of all their interest in her estate, of the legal title to such land, or the payment by him to the plaintiff, of the amount so received by him from his wife.

If there was such an antenuptial agreement, it would constitute her, in equity, a feme sole, in regard to said property ; and any contract respecting it, between her and her husband, or any disposition of it by her, which would, were it not for the intermarriage between them, create any right or obligation in her favour, against him, would be enforced.

On the question, which appears to be referred to us, by the committee, as to the admissibility of the evidence received by them to prove the loss, and also the terms, of the agreement, we perceive no objection to its relevancy for that purpose ; nor has any question been made before us, on that subject.

But we are not satisfied, that any antenuptial agreement between the defendant and his wife is found, in this case, with sufficient clearness and definiteness, to warrant a decree founded on its supposed existence. That there was some agreement between them, before marriage, respecting the property, is indeed found ; but of the precise terms or substantial import of it, the report of the committee leaves us in entire doubt, excepting that it finds, as one of the terms of the agreement, that she was to retain the sole use and controul of the said notes, as a feme sole. As the husband, but for such contract as is set up here, would, by virtue of the marriage, become entitled to all the personal property of his wife, and, in our state, arrangements by which the latter shall have separate and independent interests in property during coverture, are not favoured, the evidence of an agreement, depri-

ving the former of what would otherwise be one of his rights, acquired by the marriage, ought to be quite clear and satisfactory ; and as the effect of it depends on the whole of its stipulations taken together, it would be quite unsafe to pronounce on the rights acquired by it, upon such a partial knowledge of its terms as is furnished by this report.

The view, however, which we have taken of the other claims of the plaintiff, renders it unnecessary for us to decide upon the effect of the finding of the committee, as to the terms of said contract, because, supposing its terms to have been sufficiently shown, the report finds no such agreement between the defendant and his wife, respecting the moneys, the avails in part of the note against *Babcock,* which the defendant received from his wife during the coverture, nor any such circumstances attending the reception or subsequent investment or disposition by him of those moneys, that he can either be now treated as a trustee for her heirs of the land purchased by him with those moneys, and therefore decreed to place the legal title to said land in those heirs, or in the plaintiff representing them,—or be directed, on this bill, to pay to those heirs, or the plaintiff, the amount of said moneys.

In the first place, no agreement that the amount, which the defendant so received, should be invested in land, in the name or for the use of his wife, is found by the committee ; although circumstances are found, which conduce to show such an agreement; but it is not the province of the court to find the facts in this case, from the evidence presented to us, by the committee.   It is the duty of the committee to find and report the facts which are proved before them ; and it is only on the facts so reported, that a decree can be based, unless, indeed, additional facts are found by the court, which is not the case here.   The finding that there was a just expectation, on the part of the wife, that the money received by the defendant, would be invested in land, in her name, is quite too loose, to justify us in proceeding, on the ground that there was any specific agreement between them on the subject ; much less, to enable us to determine what were the precise terms of the agreement, if any was made.   Especially is this so, where, as in this case, the circumstances reported to us, would lead us strongly to infer whatever may have been the original agreement between them, a subsequent acquiescence,

by the wife, in his disposition of the money, and of the land
purchased with it, and an abandonment by her of any trust
upon which said money was received by him, which it would
be competent for her to make. *Imlay* & al. v. *Huntington,*
ante, 146.

But, in the next place, it appears, that the land purchased
by him, has been sold and conveyed by him ; and that, there-
fore, it is out of his power to vest the legal title to it in her
heirs, or the plaintiff; and it is not found, nor is there any
reason to infer, that the purchaser from the defendant ever
had any notice that the land, while held by the latter, was clo-
thed with any trust for his wife, whereby it would pass to
such purchaser, subject to such trust. We are therefore of
opinion, on the facts reported to us, that whatever claim the
wife of the defendant had, during her life, or her heirs now
have, against him, arising out of the reception by him of a part
of the avails of her separate property, such claim constituted
only a pecuniary indebtedness, for the recovery of which, by
her heirs, a bill in equity is not only unnecessary, but an in-
appropriate remedy, and which should be enforced by an
action at law against the defendant, in favour of the adminis-
trator of his wife. Although the remedy by her, during the
coverture, on a claim of this character against her husband,
must have been in a court of equity, by reason of their legal
unity, which would prevent them from suing each other in a
court of law, such reason ceases, on her death, when an ad-
ministrator may be appointed on her estate, who may prose-
cute and recover of her husband, any debt due from him to
her, at her decease. See *Baldwin* v. *Carter,* 17 *Conn. R.*
201. The legal title to all personal property, then owned by
her, vests, not in her heirs, but in her executor or administra-
tor; by whom only, as a general rule, can it be recovered;
and the distribution of what remains of her estate, on a settle-
ment of it in the ordinary mode, is to be made to those entitled
to it, through the instrumentality of the court of probate, ac-
cording to the general provisions of law for that purpose.
The reason of this course is obvious, when it is considered,
that other persons, besides heirs, may have an interest in the
estate ; and that their rights can be ascertained or protected,
only by means of such a regular settlement as the law requires.
There may indeed be peculiar circumstances, where relief

*Tolland,*
*August, 1850.*
West
*v.*
Howard.

will be granted to those ultimately entitled to the estate of a deceased person, without the formality of a regular administration in a court of probate ; but in this case, no such circumstances are claimed to exist. On the ground, therefore, that the plaintiff, representing the heirs of Mrs. *Howard,* has no legal title, and it does not appear that he has any equitable title, to the debt which is claimed to have been due from the defendant to his wife, at her decease ; and that it can only be recovered through her administrator ; the plaintiff is not entitled to a decree on this bill, for the amount of such debt.

We therefore advise, that the bill be dismissed.

In this opinion the other Judges concurred.

*Bill dismissed.*