## J. MILTON COBURN, CONSERVATOR, AND JOHN PAUL, ADMINISTRATOR, vs. WILLIAM T. RAYMOND ET AL.

Third Judicial District, New Haven, January Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Where the facts are found and reported by a committee, it is reversible error for the trial court to find or infer additional facts material to the judgment, unless further evidence is submitted.

The contracts and conveyances of persons who are *non compos mentis* but not under guardianship, are voidable only, not void.

The better and more generally adopted rule is that a court of equity will not cancel or set aside the deed of an incompetent person, where the grantee has acted fairly, in good faith, and without knowledge of the grantor's incompetency, unless the consideration be refunded or the grantee be restored to his original position, and injustice be thus avoided.

The facts in the present case reviewed and *held* to show that the grantees were not negligent in assuming and believing that the mental deficiency of the grantor was not such as rendered her incapable of executing a valid deed.

The transaction in question was entered into by a mother, her son, and an incompetent daughter, on the one side, and the defendants, on the other. The conservator of the daughter, and, upon the daughter's death pending suit, her administrator, sought to set aside deeds given by her to the defendants, who acted in good faith and without knowledge of the daughter's mental infirmity. If successful, the property involved would, unless needed for debts, pass to the estate of the mother, who had also died after inheriting her daughter's estate. *Held* that inasmuch as the mother, by standing by and permitting the defendants to receive deeds from the daughter in the belief that they were in all respects valid, would have been estopped from thereafter asserting her daughter's incompetency as against the defendants,—the plaintiff would also be affected by the same equity in so far as the suit was for the benefit or advantage of the mother's estate.

A valid deed may be executed by one who is not of average mental capacity.

Submitted on briefs January 19th—decided March 3d, 1904.

ACTION to set aside certain deeds of real estate, to foreclose a mortgage, and for other equitable relief, brought to the Superior Court in Fairfield County and referred to a

committee who found and reported the facts, upon which judgment was rendered (*Case, J.*) for the plaintiff, from which two of the defendants appealed.  *Error and judgment reversed.*

The action was originally brought in the name of the conservator of Jane E. Jennings and Helmina J. Jennings, the defendants being Francis M. Jennings and William T. and Thomas I. Raymond.   The case was referred to a committee to find the facts.   After the committee reported, Helmina died and a month thereafter Jane also died.   An administrator having been appointed upon Helmina's estate, he suggested upon the record the deaths aforesaid and entered as the administrator of Helmina to prosecute.   The committee's report was then accepted and judgment rendered.

The facts found are in substance as follows : In 1880 Joshua Jennings died intestate, leaving, among other estate, his homestead of seven acres and another tract of land of fifteen acres.   He left a widow, Jane E. Jennings aforesaid, and four children, of whom Helmina and Francis M. Jennings aforesaid were two.   The widow and said Francis and Helmina thereafter continued to live together in said homestead until after the commencement of this action, when the said Jane and Helmina died.   As the result of conveyances between the surviving family of Joshua, it transpired that in 1899 Francis owned (1) the homestead, subject to an interest in his mother, and also subject to a mortgage for the principal sum of $3,000 to the South Norwalk Savings Bank, which mortgage covered both the interest of Francis and his mother; and (2) the fifteen-acre tract, subject to a mortgage to Helmina for the principal sum of $2,000.   There was also a second mortgage, made in 1896, covering both premises, to the defendants Raymond, for $1,000, of which sum $600 was a pre-existing debt, the balance of the mortgage being made to secure interest and future book accounts.

In the autumn of 1899 the Savings Bank instituted a foreclosure of its said $3,000 mortgage, because of a default in payment of interest ; Francis M. Jennings was financially

embarrassed, and unable to extricate himself or to redeem said mortgage. He called upon the Raymonds and requested their assistance. They offered to assume the Savings Bank mortgage and the interest due thereon, together with unpaid taxes and the expenses of foreclosure, and to cancel the indebtedness due to them, provided said Jennings would give them a deed of both tracts, conveying the whole title, cleared of the interest of his mother and sister; and with the further agreement on the part of the Raymonds that they would give Jennings a lease of said premises for ten years at a yearly rental of $325, with an option to repurchase at any time within ten years, on payment to them of the original cost. This proposition was accepted, after consideration, and on January 16th, 1900, in furtherance of said agreement, the following papers were executed, to wit: (1) A quitclaim deed from Francis M. Jennings and Jane E. Jennings to the defendants, covering their interest in the seven-acre tract; (2) a quitclaim deed from Helmina J. Jennings to Francis M. Jennings, releasing her mortgage on the fifteen-acre tract; (3) a quitclaim deed from Francis M. Jennings to the Raymonds, covering his interest in the fifteen-acre tract, which deed was subsequent to the last-mentioned deed; (4) a lease from the Raymonds to F. M. Jennings and his son, of both tracts for ten years, with an option to purchase during the continuance of the lease.

These deeds were executed under the following circumstances: The defendant Thomas I. Raymond acted for himself and William T. Raymond. After said Raymond made the offer hereinbefore detailed, and before January 16th, 1900, Francis M. Jennings told his mother, Jane E. Jennings, that he was in trouble, that the bank would take the property unless he could raise money, and informed her of the proposition of Raymond. He made these statements in the presence of Helmina. It does not appear what reply, if any, was made by either. Raymond never had any personal communication with the ladies regarding the matter. After Jennings had agreed to the proposition, Raymond directed his attorney to prepare the necessary papers, and

sent his bookkeeper with the attorney to the Jennings house, where the attorney, the bookkeeper and the three Jennings all being present, the deeds were read and executed. Neither the attorney nor the bookkeeper observed that either lady was not competent to understand the deeds.

Neither of the Raymonds knew anything about the mental condition of Jane E. Jennings. Thomas I. Raymond had met Helmina J. Jennings some years before and knew that she was not a person of average mental ability, but he did not know whether or not she had sufficient capacity to understand or execute a deed. The Raymonds considered that they were dealing with Francis M. Jennings alone; and he was not acting as their agent, but solely for his own benefit, in obtaining the signatures of his mother and sister. Jane E. Jennings was eighty-four years old when she signed the deed, but her mind was not impaired to such an extent that she did not understand what she was doing, and she understood that she was conveying her interest in the land to the Raymonds, in order that her son and herself might thereby be saved from losing their home. Helmina Jennings was of inferior intellect; she could read and write to some extent, and she attended church and Sunday-school, but she was incapable of transacting any business intelligently, and could not be trusted to go to church or to the village alone, or to dress herself without advice. She did not understand the meaning of the deed read to her, and had not mental capacity to do so, and this fact was well known to Francis M. Jennings when he procured her signature. She received no consideration for her signature, except that by means of it her brother was enabled to obtain the lease from the Raymonds, which, if its terms were complied with, would presumably enable her to remain with him in the homestead instead of being ejected therefrom. She was incapable of understanding this advantage.

The plaintiff still holds the $2,000 mortgage. All allegations of fraud or conspiracy on the part of the Raymonds are found untrue.

The court rendered judgment cancelling and setting aside

the deed from Helmina to her brother and that from him to the Raymonds, embracing the fifteen-acre tract, and foreclosing the brother and the Raymonds under the $2,000 mortgage.

*John H. Light* and *William F. Tammany*, for the appellants (William T. and Thomas I. Raymond, defendants).

*Joseph A. Gray* and *John J. Walsh*, for the appellees (plaintiffs).

PRENTICE, J. This case was sent to a committee to find and report the facts. The committee's report was accepted and thereon judgment was rendered. The court heard no evidence to determine any fact. The judgment-file recites that it is found that the procurement by Francis M. Jennings of the deed from his sister Helmina was a fraud upon her, which was well known to all the defendants. The committee's report not only finds no such fact of knowledge on the part of the defendants Raymond, but expressly finds the contrary to be true. Here was error. *West* v. *Howard*, 20 Conn. 581; *Brady* v. *Barnes*, 42 id. 512; *Bennett* v. *Bennett*, 43 id. 313; *Farrell* v. *Waterbury Horse R. Co.*, 60 id. 239. If the fact thus improperly made the basis of the judgment was material thereto, the judgment must be set aside. We are thus led to inquire whether or not the judgment rendered can be supported by the facts as the committee found them. If the answer is in the negative a reversal must follow.

The contracts and conveyances of persons *non compos mentis*, when not under guardianship, are voidable and not void. *Wait* v. *Maxwell*, 5 Pick. 217; *Eaton* v. *Eaton*, 37 N. J. L. 108; *Ingraham* v. *Baldwin*, 9 N. Y. 45; *Hovey* v. *Hobson*, 53 Me. 451; *Scanlan* v. *Cobb*, 85 Ill. 296; *Freed* v. *Brown*, 55 Ind. 310.

The authorities differ as to the conditions under which, as between the parties, executed contracts or conveyances, voidable for the cause stated, may be avoided in equity.

Coburn v. Raymond.

There are cases which hold that restitution of the consideration received is not one of the conditions. *Gibson* v. *Soper*, 6 Gray, 279; *Hovey* v. *Hobson*, 53 Me. 451; *Nichol* v. *Thomas*, 53 Ind. 42; *Crawford* v. *Scovell*, 94 Pa. St. 48. Much the greater number of cases, however, hold a contrary doctrine, and support the proposition that a deed cannot be set aside on the ground of the grantor's incompetency, where the grantee acted in ignorance of the incompetency and fairly and in good faith, unless the consideration received be refunded or the grantee restored to his original position, and injustice thus avoided. *Eaton* v. *Eaton*, 37 N. J. L. 108; *Lincoln* v. *Buckmaster*, 32 Vt. 652; *Scanlan* v. *Cobb*, 85 Ill. 296; *Rusk* v. *Fenton*, 14 Bush (Ky.), 490; *Young* v. *Stevens*, 48 N. H. 133; *Boyer* v. *Berryman*, 123 Ind. 451; *Ashcroft* v. *DeArmond*, 44 Ia. 229; *Gribben* v. *Maxwell*, 34 Kan. 8; *More* v. *Calkins*, 85 Cal. 177; *Riggan* v. *Green*, 80 N. Car. 236; *Pearson* v. *Cox*, 71 Tex. 246.

The English cases give their unqualified support to the rule last stated. *Selby* v. *Jackson*, 6 Beav. 192, 200; *Niell* v. *Morley*, 9 Ves. Jr. 478; *Molton* v. *Camroux*, 2 Exch. 487; *Campbell* v. *Hooper*, 3 Sma. & Giff. 153. See also 2 Pomeroy's Equity Jurisp. § 946; 1 Story's Equity Jurisp. (12th Ed.) §§ 227, 228; 1 Devlin on Deeds, § 76.

The first case to assert the doctrine that there might be a rescission without restoration, we believe to have been *Gibson* v. *Soper*, 6 Gray, 279. The judge who wrote the opinion of the court found no little difficulty in harmonizing its views with the opinion rendered by Chief Justice Shaw in the then recent case of *Arnold* v. *Richmond Iron Works*, 1 Gray, 434, wherein a contrary doctrine was stated in plainest terms. The decision in *Hovey* v. *Hobson*, 53 Me. 451, followed about ten years later and adopted the views of the Massachusetts case. These two cases contain all that has been or can be said in favor of the position assumed. The reasoning of the court is grounded upon the watchful concern which equity maintains and ought to maintain over those who are incapable of managing their affairs. The law, it is said, makes their very incapacity their shield, so that

in their weakness they find their protection.   An analogy is
drawn between infants and persons *non compos mentis,* and
it is said that the law intends that he who deals with either
shall do so at his peril.   Pursuing the assumed analogy,
the proposition is laid down that the right of the insane to
avoid their contracts, like that of infants, is absolute and
paramount, and superior to all equities of other persons how-
ever far removed in the chain of title.   The argument is
that if restitution was required as a condition precedent to
cancellation, that might be indirectly accomplished which
the law does not permit, and the great purpose of the law,
in securing the protection of those who cannot protect them-
selves, be thus defeated.

The answer to this argument is obvious.   It sees only the
rights and interests of one party, and makes them paramount
over all other considerations.   A proceeding to set aside an
incompetent's conveyance is one in equity.   The powers in-
voked are equitable and call for the exercise of the broadest
equity.  2 Story's Equity Jurisp. (12th Ed.) § 1365*d.*   When
the case involves an innocent, *bona fide* grantee, the court
has before it two innocent parties between whom it is in
duty bound to do equity to the best of its ability.   It has
no right to shut its ears to the claims of either party.   To
say that one, however innocent he may be and however fair
his dealings, who chances to deal with an incompetent, does
so at his peril and can have no consideration in a court of
equity when he is about to be deprived of both his property
and the consideration paid for it, is to hold a harsh doctrine
which might easily transform the incompetent's shield into a
sword.   Cases of this character furnish no exception to the
maxim that he who seeks equity must do equity; so that if,
on the whole case, it would be inequitable to set aside a con-
veyance, there is no inexorable rule that it must be done be-
cause, perchance, the grantor was deficient in mental capacity.
2 Story's Equity Jurisp. (12th Ed.) § 1365*d.*

The argument under review also forgets the provisions
which are made by statute for the protection of the property
interests of incapable persons and the prompt redress of

their wrongs. It is made easy to put such persons beyond the power of contracting or disposing of their estate, and to provide a competent substitute to secure redress when occasion arises. It may be safely assumed that the friendly or selfish interest of friends or relatives will, in the presence of so simple a recourse, leave few incapable persons possessed of estate free to dissipate it, or, in the event of a wasteful bargain or disposition by one whose power has not been legally restrained, that such interest will prompt to speedy action which will lead to an intelligent conservation of the incompetent's interests before delay has witnessed the dissipation of the consideration received, or permitted substantial changes in the status of the *bona fide* grantee. These considerations deprive of much of their force the arguments for the extreme doctrine laid down in the Massachusetts and Maine cases, which is therein drawn so strongly from the necessities of the situation and the consequences to incompetents assumed to flow from any other doctrine.

The assumed analogy between the status of infants and incompetents, of which so much is made especially in the Maine case, is by no means a perfect one, and may easily be carried too far. It is one thing to hold that he who does not discover the tangible, definite and ascertainable status of minority must suffer the consequences, and quite another to say that he who fails to detect the existence of the subtle, elusive and sporadic condition of mental unsoundness, and to correctly measure its degree, cannot be heard in a court of equity to plead his ignorance and good faith. There are practical reasons for the protection of an infant who cannot be put into a position where his acts become a nullity, and who it is said cannot, or at least may not, make a disaffirmance of his conveyances of realty until time has brought him to his majority, which do not exist in the case of the incapable person. Reeve's Domestic Relations, 254. In this connection it is to be noticed that the cases in question do not stop with the logical consequences of the analogy assumed. In both States the cotemporaneous view seems to have been that if an infant disaffirm his contract he must re-

store the consideration in so far as he had it in his hands. *Badger* v. *Phinney*, 15 Mass. 359; *Bartlett* v. *Cowles*, 15 Gray, 445; *Boody* v. *McKenney*, 23 Me. 517. In the case of incompetents there is no hint of a duty to restore under any circumstances, as involved in the right of equitable cancellation. In so far as this State is concerned, argument from the analogy referred to would support the proposition that restoration was a condition precedent to an incompetent's rescission of an executed contract or conveyance, where the other party had acted in ignorance of the disability and fairly and in good faith; since the privilege of avoidance is under similar circumstances refused to an infant who has so enjoyed or availed himself of the consideration that the parties cannot be restored to their original position. *Riley* v. *Mallory*, 33 Conn. 201; *Gregory* v. *Lee*, 64 id. 407.

The true principle, however, would appear to be that the incidents of those contracts and conveyances which the law regards as voidable, whether by reason of fraud, duress, intoxication, infancy, mental disability, or other cause, differ according to the circumstance which gives rise to the defect, and that each class of cases stands in a court of equity upon a more or less independent footing, the status and incidents of each to be determined by all the conditions and considerations involved as they appeal to the judicial conscience. One deduction by analogy, however, seems fully justified, and that is, that if restitution is required of an infant, it should be required on the part of an incompetent not under guardianship, in favor of one who has dealt with him in ignorance and good faith. Both reason and authority by way of analogy, in this jurisdiction, therefore, appear to us to support, as the best general rule, the proposition hereinbefore stated as having the support of the English and the greater number of American cases.

It needs no argument to demonstrate that if restitution must be made to the immediate grantee of the incompetent, subsequent grantees, who take the title in like good faith and ignorance of the incompetent's disability, are entitled to be restored to their original position before they can be de-

prived of their property by the intervention of a court of equity.

There remains to inquire whether the defendants Raymond stand in the position of *bona fide* grantees in ignorance of Helmina Jennings' incapacity. The report finds that none of the allegations of fraud and conspiracy on their part were true, that they supposed they were dealing with Francis M. Jennings alone, that they did not know that Helmina did not have sufficient capacity to make a deed, and that neither their bookkeeper nor their attorney, who were sent to procure the execution of the deeds, observed that she was not competent to understand them. It is, indeed, found that Thomas I. Raymond had met Helmina some years before and knew that she was not of average mental ability. But average mental capacity is not required for the execution of a valid deed. *Hale* v. *Hills*, 8 Conn. 39. The land records showed, concerning the chain of title of the land in question, that Helmina's mother and all her three brothers and sisters had dealt with her as one having capacity. Her then interest was one thus created. Her mother, not to mention her brother of the same household, was a participant with her in the present transaction, and stood by as she executed her conveyance. Clearly the defendants Raymond were not, under all the circumstances, negligent in assuming and believing that her deficiency in mentality was not such as to make her incapable of executing a valid deed.

There is one other aspect of the case which should not be overlooked. Subsequent to the filing of the committee's report Helmina died, survived by her mother who died later. The mother thus became the sole heir at law of Helmina. General Statutes, § 398. If Helmina left no creditors, the fruit of the action would enure to the benefit of the mother's estate. The mother, who was competent, was a party with Helmina in the transaction in question. She was present when her daughter executed the deed sought to be set aside. She knew the purpose of the deed and of the general transaction of which it formed a part. Thus standing by and

permitting the Raymonds to contract as they did upon the faith that they were receiving deeds from competent persons, and actively participating in the transaction, she would be estopped from thereafter setting up the incompetency of such persons, against those whom she thus assisted in deceiving. *Gregg* v. *Wells*, 10 Ad. & E. 90 ; *Rusk* v. *Fenton*, 14 Bush (Ky.), 490, 493 ; *Field* v. *Doyon*, 64 Wis. 560 ; *Ex parte Hall*, 7 Ves. Jr. 261, 264.

If it should appear that the estate sought to be recovered was not needed for the payment of the debts of the deceased Helmina, and that therefore the benefits arising from the foreclosure would accrue to her mother's estate, the facts suggested would become of controlling importance in balancing the equities in the case and in determining whether or not it was, on the whole, equitable that the Raymonds should thus be deprived of that for which they have paid, for the benefit of the estate of one who occupied towards them the position of Mrs. Jennings.

The other claims of error need not be considered.

There is error and the judgment is reversed.

In this opinion the other judges concurred.