[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF THE CASE
In April and May of 1992, the plaintiff purchased various art objects from the Sakia Art Gallery in New Haven. The defendant Camco International Corporation (Camco) owns the gallery, operated by the defendant Eugene Cam.
The plaintiff is a mentally disabled veteran and since 1971 has been treated for his illness. He is classified as 100% disabled and receives a pension from the Veteran's Administration.
He claims in this action that during the times he dealt with the defendants, he had stopped taking his medication as a result of which he was incapable of making rational decisions.
The plaintiff brought this action on August 6, 1995 in five counts, alleging: (1) failure to deliver to the plaintiff those articles purchased by the plaintiff; (2) conversion of the CT Page 12309 plaintiff's property; (3) obtaining moneys from the plaintiff by false pretense; (4) violation of the Connecticut Unfair Trade Practice Act, § 42-110(a) et seq. of the Connecticut General Statutes; and (5) unjust enrichment, seeking restitution.
The defendants have counterclaimed, alleging: (1) a failure to pay for merchandise taken on approval; (2) conversion; (3) unjust enrichment; and (4) a violation of the "covenant of good faith and fair dealing."
At oral argument on October 20, 1998 after briefs had been filed, counsel for the plaintiff agreed that count 4 of the complaint, the CUTPA claim, is barred by the three year statute of limitations, governing CUTPA claims. Avon Meadow CondominiumAssociation et als v. Bank of Boston Connecticut,50 Conn. App. 688 (1998).
Further, counsel for the defendant conceded that there is no statute of limitations issue applicable to the plaintiff's contract claims.
Finally, counsel stipulated that the pots they examined in the basement of Mr. Perlmutter's office are the same items appraised by O'Toole-Ewald Art Associates, Inc. Their appraisal, as of May 15, 1992, was $17,500.
 DISCUSSION
Counsel for the defendant summed up this case most aptly when he stated at argument that it was really a question of credibility. In order to make the decisions as to credibility, the court examined several areas where the versions of the parties differ. These will be treated below.
 I.
In view of the plaintiff's claim that he lacked the capacity to enter into the purchase contract and that the defendants should have known this, because of his behavior, the court looks to the evidence as to the plaintiff's appearance and behavior during the time these transactions took place.
Jill Cam, wife of the defendant Eugene Cam, described the plaintiff in his visit to the store as "energetic, lucid, . . . he knew what he liked." He spoke clearly and she saw no CT Page 12310 disability.
Eugene Cam described the plaintiff as a totally different person from the one who appeared at trial. According to Cam, he was curious, alert, and had fine taste. He was discriminating in his selection.
The plaintiff presented Dr. Steven Berkowitz, a psychiatrist who had treated Mr. Finnell prior to and during the time the plaintiff was dealing with Mr. and Mrs. Cam. Dr. Berkowitz testified at some length, and described the plaintiff as one whose impairment is severe and whose state would be apparent to a lay person. When he is deprived of his medication, he would be "hard to follow, anxious, pacing and talking to himself." He would go on spending sprees, have delusions, and be easily manipulated by those he saw as his friends. He could not judge the true value of his purchases. The doctor did believe the plaintiff could testify credibly.
After going off his medication in April of 1992, Mr. Finnell was discharged from the VA hospital on April 28th. He was re-admitted on May 26, 1992. In his detailed report of Mr. Finnell's treatment, Dr. Berkowitz concludes:
 "It is my opinion, that during the period from approximately March 20, 1992-June 22, 1992, Mr. Michael Finnell was psychotic, delusional and manic and was unable to think logically and understand the consequences of his actions. His judgement was severely impaired and it is not clear that he had much if any understanding of his behavior during this period of time."
 II.
On May 14 or 16, 1992, the plaintiff took delivery of a quantity of packing boxes containing a quantity of artifacts. The parties disagree as to the date, the number of boxes, and the contents.
The plaintiff claims he received 11 boxes on May 16, 1992 and that the contents of those boxes were all that he received and were listed in the inventory he prepared on August 3, 1993 and mailed to the defendants. (Exhibit S). This is also the same material appraised (Exhibit A) and stipulated as being in Attorney Perlmutter's basement. CT Page 12311
The plaintiff's brother William Finnell confirmed his brother's testimony as to the May 16 delivery and as to the number of boxes. He stated they were numbered from 1 to 11 and then 12, with no box 11. The plaintiff testified that he called the defendant Eugene Cam and advised him of this and was told there was no box 11, it was an error in the numbering.
According to the plaintiff, he only received pottery bowls and some baskets, while Cam claims the shipment included jewelry, paintings, and lithographs. The parties also disagree about two sculptures, Cam saying the plaintiff exchanged them for the pottery and the plaintiff stating that he was told they had been sold and he could pick out something.
The court finds it puzzling that Mr. Cam was able to produce detailed receipts in pristine condition to support his claim of delivering 17 boxes while pleading that a flood destroyed all of his business records — over 100 boxes in fact.
It is also puzzling that Mr. Cam let Mr. Finnell help him pack this fragile merchandise, as he claims and Finnell denies, and to pack copies of the receipts in the boxes, thus leaving Mr. Cam without copies and only Mr. Finnell's assurance that he would make copies and send them to Cam.
This is not the only time that Mr. Cam departed from his apparently meticulous record keeping, for he testified that in the first week of May 1992 when Mr. Finnell first made purchases, he made a list of the items on bond paper, but kept no copies.
 III.
Included as part of his counterclaim and supported by more copies of an alleged "delivery on approval" arrangement, the defendants claim to have delivered to the plaintiff $36,040.00 worth of pottery in addition to that referred to above.
The defendants have produced an original receipt, also in pristine condition, and apparently signed by Mr. Finnell, acknowledging receipt of these items. Interestingly, this "on approval" transaction appears to be an "all or nothing" deal. The terms refer to "the above listed items" and a "return of the items", but nothing suggests a purchase of some of the items. Also, sales tax is computed and charged on the total sales price. CT Page 12312
When asked why he never actively sought the return of this material, Mr. Cam became defensive and to the court's eye, evasive.
He first suggested a superstitious fear because he was dealing with goods he had inherited and having put them into commerce, he risked bringing disfavor on himself.
He next offered the explanation that he was afraid to venture into Mr. Finnell's neighborhood for fear he would be the victim of a racial attack. A "racial incident" he cited as the basis for his fear had not yet occurred and it did not involve Mr. Finnell's neighborhood.
Apparently it never occurred to Mr. Cam to go to the police as he could have, nor to engage the services of someone to visit the unintimidating Mr. Finnell. Instead, Mr. Cam claimed he sent several "demands" to Mr. Finnell. These demands were photocopies of the "on approval" agreement on which Mr. Cam, applied large block letter requests for payment. No originals of these modified "on approval" forms were produced.
 CONCLUSION
The third count of the complaint sounds in fraud, alleging inter alia that the defendants obtained money from the plaintiff by false pretenses with the intent to defraud.
 "If you contract with someone who lacks the mental capacity to enter into a legally enforceable contract, not only is the contract voidable on grounds of incapacity; it is voidable on grounds of fraud, provided that the other party to the contract deliberately took advantage of the mental incapacity when he made the contract." (Citations omitted). Sutliff, Inc. v. Donovan Companies, Inc., 727 F.2d 648, 653 (1984); Hunt v. Golden, 532 P.2d (1973).
This latter named case also stands for the proposition that in such attempts at recission, proof of a position of trust and confidence between incompetent vendors and purchaser was not necessary, nor was proof that the value of purchased property was misrepresented.
Connecticut recognizes that contracts are voidable by reason of fraud and mental disability. Coburn v. Raymond, 76 Conn. 484, CT Page 12313 492 (1904).
The evidence submitted and considered and in particular the evidence discussed above is clear and convincing that:
1. At all times that the plaintiff dealt with the defendant Cam he was so mentally disabled as to be unable to enter into a valid contract.
2. The defendant Eugene Cam and Jill Cam, an employee of the defendants, dealt with the plaintiff fully realizing that they were dealing with an incompetent person.
3. The defendant Eugene Cam and Jill Cam acted to defraud the plaintiff, by contracting with him, by selling him material at grossly inflated prices, by falsely representing the quantity and quality of the items delivered to him, by representing to him that they were delivering items that were not delivered, and by fabricating a false "on approval" sales transaction.
4. The plaintiff received only the 11 boxes he claimed to have received, which items have an appraised fair market value (as of May 1992) of $17,500, for which he was charged $40,988.00.
5. The plaintiff never received $34,000.00 worth of pottery "on approval" and the defendant Eugene Cam fabricated that entire "transaction" and the supporting paper work.
6. The defendant Eugene Cam an officer and stockholder in the defendant Camco International, Inc., is personally liable to the plaintiff for his tortious conduct.
 JUDGMENT
In view of the following court's findings, counts 1 and 2 are not pertinent nor relevant. The CUTPA claim is not viable as noted above. Though the defendants have been unjustly enriched, relief under count 5 is not necessary since the court's finding of fraud under count 3 serves to rescind the entire transaction.
It is therefore the judgment of the court that the contract between the parties be rescinded by reason of fraud, and:
1. Judgment may enter for the plaintiff to recover of CT Page 12314 the defendants the sum of $40,988.00, plus legal interest from May 16, 1992 to October 27, 1998 (the date hereof) in the amount $26,425.89, for a total of $67,413.89. The plaintiff is entitled to taxable costs.
2. The defendants' counterclaims are denied and judgment may enter for the plaintiff thereon.
3. Upon satisfaction of this judgment, the plaintiff shall return to the defendants the material listed in Exhibits A and S, presently stored as noted above.
Anthony V. DeMayo Judge Trial Referee