[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: [DEFENDANT'S] MOTION TO VACATE AND REOPEN JUDGMENT (POST JUDGMENT) #144
The marriage of the parties was dissolved by this court on October 10, 2001. The judgment of dissolution incorporated the written agreement of the parties and made its provisions orders of the court. On October 30, 2001, the defendant filed a motion to vacate and reopen judgment. The attorney who represents the defendant for this motion did not represent the defendant in the dissolution proceedings. The motion alleges "at the time the defendant signed [the written agreement] she lacked the mental, emotional, and psychological capacity to knowingly voluntarily and intelligently enter into an agreement and/or waive her marital rights." CT Page 8270
The defendant claimed that her lack of mental capacity was due to depression, low blood sugar and a self induced overdose of anti-anxiety medication. Furthermore, the defendant testified, that during the canvass, she answered the court's questions affirmatively, under duress, because of a pending criminal case in which the plaintiff is the victim.
The court will first address the claim of duress.
 The principles that govern the opening of a stipulated judgment on the ground of duress are not in dispute. General Statutes § 52-212a and Practice Book § 326 vest discretion in the trial court to determine whether a judgment should be opened for cause . . . A motion to open a stipulated judgment, when "grounded on mistake or duress, necessarily requires the court to make a factual determination before it can exercise its discretion to grant or deny the motion. . . ." In making its factual determination whether a stipulated judgment should be opened, the court must inquire into whether the decree itself was obtained by fraud, duress, accident or mistake. . . . "A stipulated judgment . . . is not voidable on the ground that it was accepted with reluctance, so long as its procurement was not the result of fraud, duress, or mistake.". . . To conclude that a stipulated judgment resulted from duress, the finder of fact must determine that the misconduct of one party induced the party seeking to avoid the stipulated judgment to manifest assent thereto, not as an exercise of that party's free will but because that party had no reasonable alternative in light of the circumstances as that party perceived them to be. (Citations omitted). Jenks v. Jenks, 232 Conn. 750, 753 (1995).
The defendant did not produce any evidence of misconduct on the part of the plaintiff which affected the defendant's assent to the agreement. The court finds that the defendant was not under duress when she signed the agreement or at the time she was canvassed.
The defendant claims that she did not have the mental capacity to enter into the agreement. The contracts of a person non-compos mentis, when not under guardianship, are voidable and not void. Coburn v. Raymond,76 Conn. 484 (1904). The test of mental capacity to make a contract is whether at the time of execution of the instrument the maker possessed CT Page 8271 understanding sufficient to comprehend the nature extent and consequences of the transaction. Nichols v. Nichols, 79 Conn. 644 (1907).
The defendant, a diabetic, claims her mental capacity was affected by low blood sugar. Dr. Reid, who treats the defendant for diabetes, testified that the defendant has excellent control of her blood sugar. He also testified that the defendant's blood sugar readings on the morning and evening of October 10, 2001, the date of dissolution, were excellent. He testified that the symptoms of low blood sugar would include; trouble getting one's thoughts together, an effect on the central nervous system, becoming argumentative, and slurred speech.
The defendant testified that she experienced symptoms of low blood sugar on the morning of October 10, 2001 50 she took a sugar tablet at approximately 10:30 a.m. Because of the lack of credible evidence that the defendant displayed symptoms of low blood sugar on the morning of October 10, 2001, the court cannot conclude that the defendant's mental capacity was affected by low blood sugar.
The defendant also claims that her mental capacity was affected by psychiatric illness, specifically, severe depression with psychotic features. Dr. David Johnson, a clinical psychologist, conducted an independent psychiatric/psychological status of the defendant on February 7, 2002. He met with the defendant for two hours. Considering all of the evidence, the testimony of Dr. Johnson does not persuade the court that the defendant lacked the mental capacity to sufficiently understand and comprehend the nature, extent and consequences of the written agreement she signed.
The defendant claims her mental capacity was affected by a self induced overdose of her anti-anxiety medication known as Ativan. The defendant testified that she took the overdose of Ativan, ten to fifteen tablets, after she signed the written agreement. The overdose could not have affected her mental capacity when reviewing and signing the agreement. The defendant also testified that a half hour elapsed between the time she took the Ativan and the time when she came into the courtroom for the dissolution proceeding. The defendant's treating psychiatrist, Dr. Liebman, testified ten to fifteen tablets is a moderate overdose and the maximum effects would occur in one to two hours
When the defendant saw Dr. Liebman on October 11, 2001, the day after the dissolution, she did not mention an Ativan overdose. The defendant's medical records, Plaintiffs Exhibit 1, for the October 11, 2001 visit and a subsequent visit on October 24, 2002 do not mention an overdose. Dr. Liebman testified that the effects of an overdose would be; diminished alertness and, a tendency to answer questions too quickly without CT Page 8272 understanding the consequences of the answers. The court notes that when the defendant was asked about her responses to the court's questions she testified that they were delayed because she was trying to process the information.
Dr. Liebman's notes for the October 11, 2001 visit indicate that the defendant was unhappy with what she viewed as an "unfavorable divorce" however she was determined to start a new life. There is no indication in the notes tat the defendant believed she lacked the mental capacity to enter the agreement.
There is insufficient evidence for the court to find the defendant took an overdose of medication, and in the event that she did take an overdose of medication, the defendant has not persuaded the court she suffered from a lack of mental capacity at the time the court canvassed her on the written agreement.
In reaching its conclusions, the court has also considered the following facts. The parties had commenced the trial of this dissolution of marriage case before Judge Kenefick on October 9, 2002; the next day the parties entered into their agreement. At the trial, and on the day of the dissolution, the defendant's divorce attorney, At. Angelo, was present along with an accountant the defendant had retained in connection with the dissolution action. The defendant's attorney in her criminal case, At. Antollino, was present in court on the morning of the dissolution. The attorneys for the parties were engaged in negotiating a separation agreement prior to the trial date. At. Angelo testified he had no reservations in presenting the agreement, signed by the defendant, to the court for approval. The transcript of the canvass of the defendant indicates she was asked at least twenty-four questions which she answered appropriately.
In light of the testimony from the defendant as to the manner by which she answered the questions, and in light of the testimony from Dr. Reid and Dr. Liebman as to how certain medical conditions might affect the defendant, the court ordered the monitor's tape of the proceedings of October 11, 2001 played in the presence of counsel and parties. Listening to the tape persuades the court that the defendant responded directly and appropriately to the questions asked by her attorney and the court. Any misunderstanding of a question was due to courtroom acoustics and the court's poorly phrased questions. Any questionable responses were clarified by the defendant without difficulty.
Finally, as late as October 24, 2001, the defendant, through At. Angelo, was seeking implementation of the provisions of the separation agreement. Such action casts doubt on the credibility of the defendant's CT Page 8273 claims.
For the foregoing reasons the defendant's motion to open judgment is denied.
 ___________________ Domnarski, J