Hovey *v.* Hobson.

--------◆--------

EDWIN S. HOVEY *versus* ALMON L. HOBSON.

If the deed of an insane person not under guardianship, obtained without fraud and for an adequate consideration, has never been ratified or affirmed, it may be avoided by his heirs, not only as against his immediate grantee, but also as against subsequent *bona fide* purchasers for value and without notice.

ON EXCEPTIONS from *Nisi Prius*, DAVIS, J., presiding.
WRIT OF ENTRY.

Upon the ruling of the presiding Judge, a nonsuit was entered by consent, to be taken off if in the opinion of this Court the ruling was erroneous.

The facts appear in the opinion.

*A. Merrill*, in support of the exceptions.

*H. P. Deane*, contra, —

Cited *Arnold* v. *Iron Works*, 1 Gray, 434; *Norton* v. *Norton*, 5 Cush., 530; *Gibson* v. *Soper*, 6 Gray, 280; *Anderson* v. *Roberts*, 18 Johns., 215; *Bean* v. *Smith*, 2 Ma-

son, 252; *Edgall* v. *Lowell*, 4 Verm., 405; *Oriental Bank* v. *Harkins*, 3 Met., 332; *Somes* v. *Brewer*, 2 Pick., 183.

*Rand*, on same side, contended that, —

Neal was under no legal disability, and hence his deed was only voidable. 2 Kent's Com., 451, and cases cited. *Wait* v. *Maxwell*, 5 Pick., 217; *Allis* v. *Billings*, 6 Met., 415. That it conveyed a seizin to the grantee. The deed may be set aside as between immediate parties, but not as to subsequent *bona fide* purchasers from the grantee for value without notice. *Wood* v. *Mann*, 1 Sumner, 506. Such principles applicable to all voidable deeds. Any other doctrine would destroy all faith in records, set afloat all titles to real estate, and defeat the object of the law.

APPLETON, C. J.—On July 27, 1835, Stephen Neal, then owning the land in controversy, conveyed the same to Samuel E. Crocker, from whom the tenant by various mesne conveyances derives his title.

On Dec. 28, 1836, Stephen Neal died, leaving Lydia Dennett, then wife of Oliver Dennett, his sole heiress at law. On Dec. 18, 1851, Oliver Dennett died.

On July 15, 1858, Lydia Dennett conveyed the demanded premises to the plaintiff.

The plaintiff introduced evidence tending to show that Stephen Neal at the date of his deed to Crocker was insane, and claimed to avoid said deed by reason of such insanity.

After the testimony reported had been introduced, the presiding Justice ruled " that, if Samuel E. Crocker without fraud, for an adequate consideration, purchased the land of Stephen Neal, and afterwards said Crocker and those claiming under him, conveyed said land in good faith until it came into the hands of the tenant, for a valuable consideration, without any knowledge on his part of any defect in the title, or of any right or claim of any other person therein, then Mrs. Dennett or those claiming under her could not avoid her father's deed *as against the defendant*, on the

ground of his unsoundness of mind; and that the tenant would be entitled to a verdict."

If Crocker, " without fraud, for an adequate consideration, purchased the land of Stephen Neal," Neal being sane, his grantees would undoubtedly acquire a good title. The ruling is that, if insane, the same result would follow, the grantees of Crocker being *bona fide* purchasers, and ignorant of the insanity of Neal. The questions therefore arise, (1,) as to the rights of an insane man when restored to sanity, or of his heirs to avoid, as against his immediate grantee, his deed executed and delivered when insane ; and, (2,) as to the rights of those deriving a title in good faith without notice, and for a valid consideration from such grantee.

(1.) The deed of an insane man not under guardianship is not void but voidable, and may be confirmed by him if afterwards sane, or by his heirs. If under guardianship, the deed is absolutely void. *Wait* v. *Maxwell*, 5 Pick., 219. The right of avoiding a contract exists, notwithstanding the person with whom the insane man contracted was not apprized of and had no reason to suspect the existence of such insanity, and did not overreach him by any fraud or deception. *Seaver* v. *Phelps*, 11 Pick., 304. So an infant may avoid his contract, though the person dealing with him supposed him of age; *Van Winkle* v. *Ketcham*, 3 Caines, 323 ; or even when he fraudulently and falsely represented himself of age. *Conroe* v. *Birdsall*, 1 Johns. Cases, 127. The deed of an insane man being voidable, he may ratify it after he becomes sane, or his heirs after his decease. *Allis* v. *Billings*, 6 Met., 415. An insane person or his guardian may bring an action to recover land of which a deed was made by him while insane, without first restoring the consideration to the grantee, the deed not having since been ratified nor confirmed. *Gibson* v. *Soper*, 6 Gray, 279. In this case, the remark of SHAW, C. J., in *Arnold* v. *Richmond Iron Works*, 1 Gray, 434, that if " the unfortunate person of unsound mind, coming to the full possession of his mental faculties, desires to relieve himself

from a conveyance made during his incapacity, he must first restore the price, if paid, or surrender the contract for it, if unpaid," is limited and restricted by THOMAS, J., "to the case of a grantor having in his possession the notes which were the consideration of the deed and restored to the full possession of his mind." In the deed or other contract of an insane man the consenting mind is wanting. "To say that an insane man," observes THOMAS, J., "before he can avoid a voidable deed, must first put the grantee *in statu quo*, would be to say, in effect, that, in a large majority of cases, his deed shall not be avoided at all. The more insane the grantor was when the bargain was made, the less likely will he be to retain the fruits of his bargain, so as to be able to make restitution. It would be absurd to annul the bargain for the mental incompetency of a party, and yet to require of him to retain and manage the proceeds of his sale so wisely and discreetly that they shall be forthcoming, when with restored intellect he shall seek its annulment." Lunatics and persons *non compos* are not bound by their contracts, though no fraud nor imposition has been practiced on them. *Chew v. Bank of Baltimore*, 14 Maryland, 318.

The ruling presupposes a sale without fraud and for an adequate consideration. That a grantor sold his land for a fair price, that the purchase money was fully secured, that in the transaction he evinced by his conduct a knowledge of the value of his property and capacity in its management, would go far to negative an utter incompetency to contract, inferable only from a loss of memory common to old age or from a disregard of the decencies or courtesies of life. So the conversion by a feeble old man past labor, of property unproductive and burdened by taxation, into notes well secured and bringing an annual income, would hardly be deemed proof of utter imbecility, if the price was equal to the fair market value of the property sold.

As the deed of an insane man is voidable only, it follows that it is capable of subsequent ratification by the grantor if he be restored to reason, or by his heirs. The retention

of the notes after such restoration and the receiving payments on them, would be evidence of such ratification. In the analogous case of infancy, it seems that there may be an acquiescence by the grantor under such circumstances as would amount to an equitable estoppel. In *Wallace's Lessee*, v. *Lewis*, 4 Harrington, 75, it was held, that an infant's acquiescence in a conveyance for four years after age and seeing the property extensively improved, would be a confirmation. Though mere lapse of time will not amount to a confirmation, unless continued for twenty years, yet in connection with other circumstances it may amount to a ratification. *Cresinger* v. *Welch*, 15 Ohio, 156; *Wheaton* v. *East*, 5 Yerger, 41. Whether, in the case before us, the deed of Stephen Neal has been affirmed by the reception, by those authorized, of the purchase money for the land, or the heir at law after the death of her husband or the passage of the laws in relation to married women is equitably estopped by her omission to act under circumstances which required action on her part, are questions which at this time are not pressing for consideration.

It is true the English Court adopt a somewhat different doctrine from that of the American Courts as to the right of an insane man when sane, or of his heirs to avoid a deed or contract executed when insane. Thus, in *Selby* v. *Jackson*, 6 Beavan, 200, Lord LANGDALE refused to set aside a deed executed in good faith by an insane man and for an adequate consideration, when the parties could not be reinstated. "There are," observes TUCK, J., in *Chew* v. *Bank of Baltimore*, 14 Maryland, 318, "many cases in England to show that such persons are held by their contracts unless fraud and imposition have been practiced, but to this we cannot assent. The doctrine in this country is the other way, and, as we think, is sustained by better reasoning than the English rule as announced in some of their decisions. The effect in many cases would be to place lunatics on the same footing with persons of sound mind, with less effective means to protect the injured party against the fraud, for at

law, as well as in equity, fraud or imposition may be relied on, without reference to the mental capacity of the parties except so far as such defect may give weight to other facts, from which the fraud may be deduced."

The ruling, however, in the case at bar, is not in accordance with that of the English courts, which require that, in addition to good faith and a full consideration, the person contracting should be apparently of sound mind, and not known to be otherwise to the party with whom he contracts. *Molton* v. *Camroux*, 2 Exch., 487. These elements are not required by the ruling under consideration.

2. It is insisted, even if the deed of Neal might have been avoided as between the original grantor and grantee, that this right of avoidance ceases when the title has passed into the hands of third persons in good faith, for an adequate consideration, and ignorant of any facts tending to impeach such title.

It is apparent that the protection of the insane and the idiotic will be materially diminished, if the heirs cannot follow the property conveyed, but are limited in their right of avoidance to the immediate grantee of such insane or idiotic person.

The acts of lunatics and infants are treated as analogous, and subject to the same rules. *Key* v. *Davis*, 1 Maryland, 32; *Hume* v. *Barton*, 1 Ridg. Pl., 77. "The grants of infants and persons *non compos* are parallel both in law and reason." *Thompson* v. *Leach*, 3 Mod., 310.

The law is well settled that a minor when of age may avoid his deed given when an infant. He may do this not merely against his grantee, but he may follow the title wherever it may be found and recover his land. "It may be objected," observes MARSHALL, J., in *Myers* v. *Sanders'* *heirs*, 7 Dana, 524, "that these restrictions upon the right of an adult to avoid his deed obtained by fraud are inconsistent with the principle which allows an infant to avoid his deed, into whose hands soever the bill may have passed and without regard to time, except as a statutory bar running

after he becomes of age. But, waiving the inquiry how far the mere acquiescence of an infant grantee after he becomes of age may determine his right of revoking his title from the hands of a purchaser for value, who has acquired it after such acquiescence, we think the analogy between the cases is too slight to have any decisive influence upon the present question. The right of an infant to avoid his deed is an absolute uncontrollable privilege, founded upon an incapacity conclusively fixed by the law to bind himself absolutely by deed or to pass an indefeasible title. These principles are irreversibly fixed by the law, and it enforces them without inquiring into particular circumstances and without regard to consequences. It must do so in order to maintain them. The right of an adult grantor, to avoid his deed for fraud, stands upon an entirely different basis. It grows out of the particular circumstances; it is founded in a regard to justice between man and man; it is given as a remedy for the hardship of his case. In its very foundation and essence, it is limited by the justice which is due to others, and therefore cannot be exercised without a regard to their rights and interests."

"But again, infancy is not, like fraud, a circumstance wholly extraneous from the title. The deed shows who the grantee is; the purchaser knows that an infant grantee cannot pass an indefeasible title; he is bound to know the identity of the person, who assumes to convey the title; and it is not an unreasonable requisition that he shall know whether the grantee, under whom he claims title, is under incapacity or not. In this view of the subject, no purchaser under an infant's deed is innocent in the eye of the law, until the title has been confirmed by the matured consent of the grantor." In *Bool* v. *Mix*, 17 Wend., 119, the suit was against one claiming by a title derived from the grantee of the minor, but the ground was not taken that in consequence thereof the tenant had an indefeasible title. The principles applicable to deeds voidable for the infancy of the grantor are equally applicable where the grantor is insane. When

a man is defrauded, he may, as against his grantee, avoid his deed, but not against those deriving in good faith and for an adequate consideration a title from such grantee. He has the ability to convey an indefeasible title, — and he does convey such title to all *bona fide* purchasers from his grantee. The insane man has not the power to convey such indefeasible title. This incapacity inheres in all titles derived from him. The grantee, whose title is thus derived, must rely on the covenants of his deed. He risks the capacity to convey of all through whom his title has passed. The rights of infants and of the insane alike to avoid their contracts is an absolute and paramount right, superior to all equities of other persons, and may be exercised against *bona fide* purchasers from the grantee. 1 Amer. Leading Cases, 259. ·          *Exceptions sustained.*

> *The case to stand for trial.*

CUTTING, WALTON, DICKERSON, DANFORTH and TAPLEY, JJ., concurred.