# A. M. IRELAND et als. *vs.* JORDAN WHITE, Administrator.

## Androscoggin.    Opinion December 13, 1906.

*Legal Incompetency.    Burden of Proof.    Physicians.    Evidence.*

The law generally presumes mental soundness, and when legal incompetency is alleged for the purpose of showing that an instrument creating an obligation by its terms is thereby invalid, such legal incompetency must be proved by a preponderance of evidence and the burden of proving the same rests upon the defendant.

Skilful and reputable physicians, although not experts upon the subject, may testify to the mental condition of their patients when they have adequate opportunity of observing and judging of their mental qualities. Such condition testified to is a fact observed, which differs from a conclusion as to legal sufficiency or insufficiency of mental capacity to be deduced in each case from facts proved, under correct rules of law.

In the case at bar, the deceased intestate in her lifetime made and delivered a certain promissory note payable after her death, and on which said note suit was brought against her administrator. The defendant contended, among other things, that his intestate was of unsound mind at the time she executed the note. The presiding Justice, against the objection of the plaintiffs, admitted a part of the testimony of two physicians engaged in the general practice of medicine and who had attended the deceased intestate professionally, in reference to the mental capacity of the deceased intestate. *Held:* that the ruling of the presiding Justice admitting this testimony was correct.

The jury specially found that the deceased intestate was of unsound mind at the time she executed the note. *Held:* that the jury did not err in this finding and that the general verdict for the defendant must be sustained.

On motion and exceptions by plaintiffs.    Overruled.

Assumpsit on a certain promissory note against Jordan White as administrator of the estate of Melinda P. Tarbox, late of Lewiston, deceased intestate. This note was for the sum of $500 and was given by Mrs. Tarbox on the 29th day of October, 1902, to one Jason Russell, and was payable after her death. After the death of Mrs. Tarbox the payee, Mr. Russell, sold and transferred this note to the plaintiffs.

Tried at the January term, 1906, of the Supreme Judicial Court, Androscoggin County. The defendant's pleadings set up three defenses, viz: "First, that Mrs. Tarbox did not sign the note: Second, that if she did sign it she was induced to do so by fraud, and Third, that at the time of said signing, if she did sign it, she was of unsound mind."

The jury was instructed to make special findings, and in accordance therewith found that Mrs. Tarbox did sign the note, that there was no fraud but that at the time of signing the note she was of unsound mind. The general verdict, therefore, was for the defendant.

The plaintiffs then filed a general motion for a new trial. The plaintiffs also took exceptions to certain rulings of the presiding Justice during the trial admitting certain testimony of certain physicians who had attended Mrs. Tarbox professionally.

The case is fully stated in the opinion.

Memorandum: One of the Justices sitting at the term of the Law Court at which this case was argued, did not sit in this case being disqualified under the statute by reason of having ruled therein at nisi prius.

*Edgar M. Briggs*, for plaintiffs.

*McGillicuddy & Morey*, for defendant.

SITTING: WHITEHOUSE, POWERS, PEABODY, SPEAR, JJ.

PEABODY, J. The plaintiffs bring this action against the administrator of the estate of Melinda P. Tarbox, late of. Lewiston in the County of Androscoggin, deceased intestate, on a promissory note

alleged to have been given by the intestate in her lifetime to Jason Russell.

The note is as follows :

"Lewiston, October 29, 1902.

For value received I promise to pay Jason Russell or order the sum of five hundred dollars payable after my death with interest.

Melinda P. Tarbox.

(Endorsed) Jason Russell."

Melinda P. Tarbox died in March, 1904, aged about eighty years. After her death Jason Russell sold and transferred the note in suit to the plaintiffs, who seasonably gave notice to the defendant who had been duly appointed and had qualified as administrator of the promisor's estate.

Three defenses are made under the pleadings : first, that Mrs. Tarbox did not sign the note : second, that if she did sign it she was induced to do so by fraud : and third, that at the time of signing, if she did sign it, she was of unsound mind. The jury were directed to make special findings on each of these points. They found that she did sign the note, that there was no fraud, and that at the time of said signing she was of unsound mind.

The verdict was for the defendant and the case comes before this court on the plaintiffs' motion for a new trial, and exceptions to the ruling of the presiding Justice allowing, against the plaintiffs' objection, part of the testimony of two physicians engaged in the general practice of medicine, in reference to the mental capacity of the deceased promisor. Dr. Ward J. Renwick who resided in Auburn and had been engaged in practice as a physician and surgeon for nearly ten years, attended Mrs. Tarbox professionally, visiting her on the first day of November, 1902, and saw her four times as his patient. In answer to questions, among others, asked by the defendant's attorney, objected to by the plaintiffs, he gave the following testimony :

Q. " What did you observe as to her mental condition, that is, getting at her mental condition by talking to her and her answers and what she said in response to the questions ?

A. I observed that her mental condition was very much impaired.

Q. Can you tell, doctor, whether her answers to your questions were wandering or not, whether or not they would meet your questions?

A. I should say that they wouldn't meet my questions. Very incoherent.

Q. Was her trouble chiefly in her mind or in her body?

A. I couldn't answer that question. I should say both.

Q. Was there anything about her case as you observed it then to indicate that her condition was one that came upon her suddenly, the first day of November, or whether it had been a gradual transfer in her mind to reaching that point?

A. It had been gradual.

Q. Were the conditions you observed on the first day of November, 1902 chronic conditions or acute conditions?

A. Chronic."

Dr. George W. Curtis of Lisbon Falls, a physician and surgeon of twenty-one and a half years' practice, who was called to attend Mrs. Tarbox the first day of December, 1902, and made an examination and diagnosis of her case, testified in answer to questions, among others, asked by the defendant's attorney and objected to by the plaintiffs as follows:

Q. "Should you say the condition of her mind that you have described was a condition that was acute or was it a chronic condition?

A. It seemed to me like a senile trouble coming on gradually."

The bill of exceptions relates solely to the ruling of the presiding Justice admitting this testimony of the two physicians.

The motion for a new trial applies only to the finding of the jury, that the maker of the note was at the time of signing of unsound mind; the other special findings were in favor of the plaintiffs.

There is no complaint that the charge of the presiding Justice did not fully present the rules of law by which the mental competency of the promisor of the note in question was to be determined upon the evidence submitted to the jury. The evidence bearing upon this question presented incidents, acts and conditions contradictory in

tendency, but the jury from the whole history of the mental condition of Mrs. Tarbox, shortly before and shortly after she signed the note, decided that she was incompetent.  The testimony of the physicians referred to, whether legally admissible or not, constituted a part of the defendant's evidence which the jury must have found was of greater weight than the opposing evidence offered by the plaintiffs.  The law generally presumes mental soundness, and when legal incompetency is alleged for the purpose of showing that an instrument creating an obligation by its terms is thereby invalid, it must be proved by a preponderance of evidence.  This being a substantive defense to the note the burden of proving it rests upon the defendant.  The paper itself although found by the jury not to be fraudulent does not appear to be an ordinary commercial transaction. It was given for $500, while the actual valuable consideration for which it was given was money loaned to her by the payee to the amount of $100, and was made payable after her death.  The explanation as to its amount and terms given by the payee is, that she wanted to do something for him and his family, that she wanted them to have something out of her estate.  Several witnesses acquainted with her testify to acts and conversations contemporaneous with the date of the note, which they noticed as unusual, and indicating changes in Mrs. Tarbox's personal habits and mental condition.  For example, that she was at one time found sitting down close to the track of the electric railroad, near the cemetery, and remained there until the motorman stopped the car and asked her if she was going to Lewiston, to which she replied she guessed so, and was then helped on to the car ; when a tenant went to pay her his rent she did not appear to know who he was ; at another time when rent was paid to her she offered a receipt so indefinite that another was made for her to sign, although she had been accustomed to collect her rents and give sufficient receipts ; that her manners at table indicated a change ; that her replies to questions in regard to her property and business affairs showed forgetfulness and failure to comprehend, making repeated explanations necessary : when acquaintances called who had been accustomed to visit her she failed to appreciate what was said to her ; and that at times she seemed to understand, and then

her mind would be right off. The testimony of the doctors stated in the bill of exceptions, and also that not objected to, show that her talk was disconnected and incoherent, and that her condition of mind indicated senile decay. Opposing testimony offered by plaintiffs of witnesses, even more numerous, who had transacted ordinary business with Mrs. Tarbox not long previous to the date of the note, showing that she borrowed money to pay taxes to save interest for which she gave her note and paid it in small amounts; and contracted and paid milk and grocery bills; that about the date of the note a deacon of the Friends' Church of which Mrs. Tarbox was a member called upon her, when she remarked that he had not been to see her lately, and said that she would like to hear about the church, that her conversation was connected and responsive to his questions, that a short time previous she made an exhortation in church and he did not see that she was any different from what she had always been; the pastor of the church who had known her for twenty years and had visited her frequently stated that he did not discover any difference in her except that she was more feeble, more tottering, and she was growing old; the pastor's wife saw Mrs. Tarbox in September, 1902 and testified that she was inquiring about the church and seemed very much interested in it, she always wanted us in the berry time to go down and get berries meaning in her garden, and said that when they were ripe she should want us to go down just the same; that she noticed nothing different in her understanding conversation from what it had always been; Dr. A. F. McAllister who had been a practicing physician between twenty-three and twenty-four years, who had lived in Lewiston about eight years and who lived opposite the residence of Mrs. Tarbox, testifies that she called at his house four or six months after her husband's death in 1901, she spoke about being lonesome and missing the care and attention her husband had given her during his life; he noticed nothing in her appearance mentally out of the usual line; her conversation was connected from anything he noticed, and her answers were entirely responsive to the questions which he asked. This testimony offered by the plaintiffs was consistent with

the theory of mental soundness of Mrs. Tarbox, but there is nothing in its nature so inconsistent with the existence of senile impairment of her mind which the defendant claims was manifested by her acts and conduct observed, on different occasions, by the witnesses called by him, as to show that the verdict of the jury was clearly wrong. It is difficult to determine, in all cases where there is decay of the mental faculties in old age, whether there is disease of the mind which would render the individual affected incompetent to transact ordinary business, or mere feebleness of the mental faculties which would not prevent the mind from acting normally. No experts have been called to explain the distinction in this case, but attending physicians have testified not only in the same manner as the other witnesses have testified to acts and conditions observed by them, but have been allowed to state what the facts which they observed and discovered by their examinations indicated as to the condition of the patient's mind ; and we see no reason to disturb the verdict of the jury as being against the weight of evidence. We now consider the exceptions to the admission of the opinions of the physicians called by the defendant, formed from what they observed as to the mental condition of Mrs. Tarbox. The testimony of Dr. Renwick is distinctly admissible on the authority of *Fayette* v. *Chesterville*, 77 Maine, 28, and *Hall* v. *Perry*, 87 Maine, 569, in which it is held that skilful and reputable physicians, although not experts upon the subject, may testify to the mental condition of their patients when they have adequate opportunity of observing and judging of their mental qualities, and that having had opportunity to observe the manifestation of the mental disease they may testify as to its nature. The condition testified to is a fact observed, which differs from a conclusion as to legal sufficiency or insufficiency of mental capacity to be deduced in each case from facts proved, under correct rules of law.

The testimony of Dr. Curtis must be considered admissible by the same rule. Under the strict procedure applicable to bills of exception we are not to infer the existence or non-existence of facts necessary to support an exception. Prejudicial error must be shown. It does not appear by the bill of exceptions in this case

that the facts and observations upon which Dr. Curtis based his opinion, "It seemed to me like a senile trouble coming on gradually," were limited to a single professional visit. *Fayette* v. *Chesterville*, supra ; *McKown* v. *Powers*, 86 Maine, 291 ; *Toole* v. *Bearce*, 91 Maine, 209.

Our conclusion is that the exceptions cannot be sustained.

<div align="right">

*Motion overruled.*

*Exceptions overruled.*