**Leon BRAGDON et al.***

v.

**Roger DREW et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 26, 1995.
Decided May 25, 1995.

---

* Charles Bragdon was also named as a party plaintiff relative to a separate claim against the defendants but did not appeal from the judgment entered on that claim.

Daniel J. Perry, Warren M. Silver, P.A., Bangor, for plaintiffs.

Donna L. Zeegers, Gardiner, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

After a jury-waived trial, Leon Bragdon, by Frederick Bragdon his guardian and conservator, and Martha Bragdon appeal from a judgment entered in the Superior Court (Waldo County, *Browne, A.R.J.*) in favor of the defendants Roger Drew, Evelyn Drew, Shirley Harris, Linwood Doughty, Jr., and Rita Doughty on the Bragdons' complaint seeking to rescind Leon Bragdon's conveyance of real property to Shirley Harris. Because the trial court erroneously concluded that to rescind the deed the Bragdons were required to prove fraud, inadequate consideration, or undue influence, in addition to Leon's mental incompetency, we vacate the judgment.

The record reveals the following evidence. Leon, Martha and Charles Bragdon are siblings living together in Montville. Frederick Bragdon is their second cousin. When Leon Bragdon returned from serving in Korea in the early 1950's, he was described as a nervous loner who manifested some mental impairment by flapping his hands up and down, honking his nose and banging his head against the wall. His condition worsened in 1976 after he was found face down on the ground with the back of his skull smashed. Although following his hospitalization Leon received speech therapy, it is difficult to converse with him because he responds to any conversation with unrelated statements. He can sign his own name and read a few words at a time, but he cannot read complete sentences. Prior to an order by the Waldo County Probate Court dated July 10, 1992, appointing Frederick guardian and conservator for Leon, Martha handled Leon's affairs, including handling the checks he received from the Veteran's Administration.

Since 1955, Leon owned 150 acres of real property on Hogback Mountain. Charles and Martha Bragdon testified that Roger Drew, their neighbor and friend for forty years, constantly asked Charles and Martha about purchasing Leon's property. They told Drew that he would have to ask Leon because it was Leon's land. Charles testified that he also told Drew that Leon would need a lawyer "because I can't understand what my brother says 90% of the time and I don't doubt that anybody else could." In contrast, Drew denied that he frequently asked about Leon's land. Drew testified that he asked Martha and Charles to inquire whether Leon was interested in selling his land, and they had advised him that they would sell the land for $15,000. Drew denied that Charles had told him that Leon would need a lawyer. He acknowledged that he was aware of Leon's bizarre behavior in 1987.

On the evening of November 24, 1987, Drew arrived unannounced at the Bragdon home. Drew was accompanied by his lawyer, Ronald Bishop, and brought a deed to be executed by Leon, conveying Leon's property to Shirley Harris, for whom Drew was acting as an agent.[1] Bishop asked Leon whether he understood that he was signing a deed and that he was selling a fairly large wood lot for $15,000 and whether his signature was his free act and deed. Bishop testified that Leon "only kind of grunted an affirmative answer" to each inquiry. In response to

---

1. Thereafter, Linwood Doughty, Jr. and Rita Doughty were each deeded a portion of the 150- acre parcel by Shirley Harris.

Bishop's inquiry of Martha as to Leon's understanding of what he was doing, she responded, "Yes." Bishop testified that he asked Martha this question because:

I couldn't be sure based on the nature of his responses, just grunting affirmative responses, whether he knew what he was doing or not. It was my understanding that a sister lived with him and that, you know, he relied on her to some degree and she would know him best.

Drew made a check payable to Leon for $15,000 and accompanied Martha when she deposited the check the next day.

When Frederick learned that Leon had sold his property for $15,000, the Bragdons filed the instant complaint seeking rescission of the deed or, in the alternative, that the land be appraised and that the defendants pay Leon the fair market value of the property. After a hearing, a temporary restraining order was entered against the defendants on August 13, 1992, directing them to refrain from logging operations on the property.

Following a jury-waived trial, the court found that "the evidence presented at trial strongly indicated that Leon was incapacitated in 1987." The court determined that a deed made by an incapacitated person, although not adjudicated incompetent, is voidable. The court entered a judgment for the defendants, however, on the ground that the plaintiffs had failed to establish as a requisite to setting aside the deed that in the course of the transaction the defendants engaged in overreaching, undue influence, fraud or had paid an inadequate consideration for the property, and the Bragdons appeal.

The Bragdons contend that although the trial court was correct in determining that mental incapacity renders a deed voidable, the trial court erred as a matter of law by concluding that incompetency alone was insufficient to set aside the deed. They argue that *Hovey v. Hobson,* 53 Me. 451 (1866) ("*Hovey I*") and *Hovey v. Hobson,* 55 Me. 256 (1867) ("*Hovey II*"), and the *Restatement (Second) of Contracts* support their contentions. We agree.

In *Hovey I,* we stated that the mental incapacity of a grantor who has not been deemed legally incapacitated, renders the deed voidable and that the mental incapacity of the grantor alone is sufficient to rescind the deed even if there existed adequate consideration and no fraud. *Hovey I,* 53 Me. at 453. We also have noted that the law "generally presumes mental soundness" and the burden to show incompetency rests on the party seeking to void the transaction executed by the incompetent individual. *Ireland v. White,* 102 Me. 233, 237, 66 A. 477 (1906).

Section 15 of the Restatement (Second) of Contracts (1981) provides, in pertinent part:

(1) A person incurs only voidable contractual duties by entering into a transaction if by reason of mental illness or defect

(a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or

(b) he is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition.

Comment a states that "a contract made by a person who is mentally incompetent requires the reconciliation of two conflicting policies: the protection of justifiable expectations and of the security of transactions, and the protection of persons unable to protect themselves against imposition." The comment further notes that although some courts have required evidence of fraud, undue influence, or inadequacy of consideration in addition to mental incompetency to rescind a contract, such a rule "is now widely believed [to provide] inadequate protection to the incompetent and his family." *Id.* We find this reasoning persuasive and in accord with our prior decisions.

We further agree with Comment c to section 15 that states:

Where there has been no previous adjudication of incompetency, the burden of proof is on the party asserting incompetency. Proof of irrational or unintelligent behavior is essential; almost any conduct of the person may be relevant, as may lay and expert opinions and prior and subsequent adjudications of incompetency. Age, bodily infirmity or disease, use of alcohol or drugs, and illiteracy may bolster other evidence of incompetency. Other facts

have significance when there is mental illness or defect but some understanding: absence of independent advice, confidential or fiduciary relationship, undue influence, fraud, or secrecy; in such cases the critical fact often is the departure from the normal pattern of similar transactions, and particularly inadequacy of consideration.

Accordingly, we conclude that the trial court erred in deciding that incompetency alone was insufficient to rescind the deed.[2]

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

2. Although not referred to by the parties, we note that 33 M.R.S.A. § 1022 (Supp.1994) provides:

  1. Presumption. In any transfer of real estate or major transfer of personal property or money for less than full consideration by an elderly person who is dependent on others to a person with whom the elderly dependent person has a confidential or fiduciary relationship, it shall be presumed that the transfer was the result of undue influence, unless the elderly dependent person was represented in the transfer by independent counsel. When the elderly dependent person successfully raises the presumption of undue influence by a preponderance of the evidence and when the transferee fails to rebut the presumption, the elderly dependent person shall be entitled to avoid the transfer and be entitled to the relief set forth in section 1024.

  2. Confidential or fiduciary relationship. For the purposes of this section, the transfer of property is deemed to have been made in the context of a confidential or fiduciary relationship if the transferee had a close relationship with the elderly dependent person prior to the transfer. Confidential or fiduciary relationships include ...

  ....

  H. A relationship between an elderly dependent person and a friend or neighbor.

33 M.R.S.A. § 1023 (Supp.1994) provides that "When a court finds that a transfer of property was the result of undue influence, it shall grant appropriate relief ... including the rescission or reformation of a deed ..., the imposition of a constructive trust ... or an order enjoining use of or entry on property or commanding the return of property."

33 M.R.S.A. § 1024 (Supp.1994) provides: "Nothing in this chapter may be construed to abrogate any other causes of action or relief at law or equity to which elderly dependent persons are entitled under other laws or at common law."